### MONTAUK ASS'N v. DALY et al.

(Supreme Court, Appellate Division, First Department.   June 7, 1901.)

1. CONTRACT FOR SALE OF LAND—AGREEMENT IN WRITING—STATUTE OF FRAUDS —DELIVERY OF CONTRACT.
    Defendant's agent had negotiated with plaintiff for the purchase of land, and had prepared and sent to plaintiff a contract for sale, which it had duly executed.   When plaintiff's agent offered to deliver the contract to defendant's agent, the latter informed him that defendant no longer wished to purchase, and that he therefore was without authority to accept the contract, notwithstanding which he took it into his possession at the request of plaintiff's agent.   Held, that there was no delivery, so as to make the contract binding on defendant.

2. SAME—PREVIOUS NEGOTIATIONS.
    Where defendant's agent wrote to plaintiff's agent offering to purchase certain land, and an agreement to sell was subsequently signed by plaintiff, but not delivered to defendant, such agreement was not a written acceptance of the offer of the letter, so as to make a valid agreement not repugnant to the statute of frauds.

3 SAME—ACCEPTANCE OF OFFER.
    Where defendant's agent wrote to plaintiff's agent offering to purchase land, and stating terms of a proposed contract, and at a subsequent meeting of the agents the draft of a proposed contract was agreed on, which differed in terms from the original offer, such memorandum of the proposed contract could not operate as an acceptance of the original offer.

Appeal from special term, New York county.

Action by the Montauk Association against Mary D. Daly, as executrix of the will of Augustin Daly, deceased, and others.   From a judgment of the special term (67 N. Y. Supp. 312) dismissing the complaint, plaintiff appeals.   Affirmed.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Robert Thorne, for appellant.
Stephen H. Olin, for respondents.

HATCH, J. The complaint in this action avers that, on or about September 19, 1898, the plaintiff entered into a contract with Augustin Daly, the testator of the defendants, for the sale to him of certain real property owned by it, and known as the "Club House Property," situated in Montauk, Suffolk county, in the state of New York, for the agreed price of $12,000; that the plaintiff was, at all the times mentioned in the complaint, ready to perform said contract, but that the said Augustin Daly failed and refused to perform the same; that subsequently the plaintiff caused such property to be sold at public auction for the sum of $6,100, that being the highest bid received for the same; and judgment is demanded against the defendants for the sum of $5,900, the difference between the sum for which the property sold and $12,000, the alleged contract price, with interest from November 1, 1898. The action was originally brought against Augustin Daly, but, he having died during the pendency thereof, the defendants, who are his personal representatives, were substituted in his place. The answer denies the making of the contract, and sets up the statute of frauds as a defense.

The undisputed facts, as disclosed by the record, briefly stated, are that one Lamb, an attorney at law representing Mr. Daly, had interviews with Mr. Alexander E. Orr, the treasurer of the plaintiff, in regard to the purchase and sale of the property in question. Pursuant to the negotiations had at such interviews, Mr. Lamb sent the following letter to Mr. Orr:

"Dear Sir: Mr. Daly authorizes me to make the following proposition for the purchase of the club house property at Montauk; the purchase to be $12,000, 40 per cent. ($4,800) payable on the delivery of the deed, which Mr. Daly would like to have arranged, if possible, for November 1st, the contract of sale, however, to be executed at once, and say $800 paid on the signing of the contract. The remaining 60 per cent. of the purchase price to be paid in three equal payments, of 20 per cent. each, the first payment to occur in four months, the second payment in eight months, and the third and last payment in twelve months. I hope very much that this proposition will be acceptable to you.     Yours, very truly,     Geo. Alfred Lamb."

This letter was dated September 19, 1898.

Subsequent to the date of this letter there were further interviews between Mr. Lamb and Mr. Orr in regard to the subject-matter thereof, and soon after Mr. Lamb called upon Mr. Robert W. De Forest, a member of and attorney for the plaintiff, taking with him a proposed contract for the sale of said property, which had been prepared by him. The provisions of this proposed contract were discussed between Mr. De Forest and Mr. Lamb, and some changes were agreed upon and made in the form thereof; and, having a map of the property before them at the time, they also prepared and agreed upon the description of the land to be conveyed. Mr. Lamb then took the proposed contract, so modified, back to his own office, and caused to be prepared a formal contract, final in form, and sent it to Mr. Orr for execution by the Montauk Association, inclosing with it the following letter:

"Dear Sir: Owing to the sudden death of my brother-in-law, I was called away last week to the northern part of the state to take charge of his inter-

ests. I inclose a copy of the agreement, which I understand is in form satisfactory to Mr. De Forest, to whom I have also sent a copy.

"Very truly yours,                    Geo. Alfred Lamb."

On October 28, 1898, after the date of the letter, Mr. Lamb met Mr. De Forest, and had an interview with him in regard to the transaction, in which he informed Mr. De Forest that he had been negotiating for the property believing that it would be purchased, and not doubting that the transaction would go through. He testified that he explained to Mr. De Forest the reason why Mr. Daly had formed the idea of purchasing the property, but that those reasons no longer existed, and Mr. Daly did not wish to purchase. After some further talk on the subject, Mr. De Forest produced the contract, duly executed by the Montauk Association, and said he would like to hand that paper to Mr. Lamb. The latter then told him again that Mr. Daly did not want to purchase the property, but Mr. De Forest said he nevertheless felt it his duty to hand him the paper; that he said, "Very well," and took it, but that previous to the receipt of the paper he had very distinctly and carefully informed Mr. De Forest that Mr. Daly would not purchase the property. Mr. De Forest was sworn upon the trial, and his testimony as to the conversation at this interview, and what occurred between himself and Mr. Lamb, substantially agrees with that given by the latter. Upon these facts, the trial court dismissed the complaint, holding that there never was any contract in writing, subscribed by the plaintiff or its representatives, except the one herein referred to, and that, as there was no valid delivery of that, the provisions of the statute of frauds were not complied with.

Under the evidence in this case, we do not see how any other conclusion than that arrived at by the trial court could be reached. The statute requires not only that the contract, or some note or memorandum thereof, shall be in writing, but that it shall also be subscribed by the grantor, or by his lawfully authorized agent; and contention is futile that a contract for the sale of land, even though duly executed by the vendor, is binding upon the purchaser, unless the contract is delivered to, and accepted by, the purchaser as a valid subsisting contract. Cagger v. Lansing, 43 N. Y. 550. In our view of the evidence, the plaintiff's claim must rest upon the contract delivered by Mr. De Forest to Mr. Lamb, the attorney for Mr. Daly. Two things regarding this delivery are made plain by the testimony—First, that the attempted delivery was made to a person not only not authorized to receive and accept such delivery, but who had been instructed to inform the vendor that his principal or client, Mr. Daly, had determined not to take the property, and subsequent acts upon the part of Mr. De Forest or Mr. Orr could not affect this matter after they were so informed; second, that it was made to a person not authorized at any time to purchase, and whose authority, whatever its scope, was ended prior to the attempted delivery, Mr. Lamb having testified that, between the date of his letter in which he submitted a contract for inspection and the time of his interview with De Forest, his client had informed him that he did not wish to purchase the property, and had

instructed him to go no further with the negotiations regarding the same. The testimony of Mr. Lamb is not disputed on any material point as to what took place between him and De Forest. It follows that, unless Mr. Daly had become bound by what took place before this attempted delivery of a contract, the plaintiff has no cause of action. As to this point, it is contended by the plaintiff that the letter of Mr. Lamb, setting forth an offer for the property, with proposed terms of payment and the oral acceptance of the same, constituted a complete legal contract. We cannot agree with this view of the transactions. Manifestly, an oral acceptance of the proposition contained in the letter would not be a compliance with the requirements of the statute of frauds requiring a memorandum signed by the grantor, or his lawfully authorized agent. But the plaintiff seeks to avoid this result by attempting to connect the draft of an agreement submitted by Mr. Lamb, claiming that this constituted an acceptance of the offer contained in the letter. This is the very instrument afterwards signed and delivered to Mr. Lamb, and cannot be construed as an acceptance of any proposition formerly made. It is a formal memorandum of agreement to sell the property on the one hand, and to purchase on the other. Nor can it be reasonably urged that the negotiations had at the time Mr. Lamb submitted the first draft of an agreement constituted an acceptance of the proposition. In fact, it is made entirely clear by what took place at that interview that the original proposition had not been accepted. The testimony of De Forest shows conclusively that neither the offer contained in the letter nor the draft of a contract made by Mr. Lamb, pursuant to subsequent negotiations, were acceptable to, or accepted by, the plaintiff. The draft was changed in many respects by De Forest, who made interlineations and additions on slips of paper, and it was from this corrected draft that the formal agreement was afterwards drawn by Lamb, and sent to Mr. De Forest and Mr. Orr, and which was executed by the plaintiff. There is no connection between the offer contained in the letter of Mr. Lamb and either one of these memorandums of agreement, the letter or paper is not referred to in either of them, but both are and purport to be independent complete memoranda for the sale and purchase of the property, and under no rule of construction could they be read together as forming one transaction. Other questions are discussed in the briefs of counsel, but, in the view we have expressed, it is not necessary that we should now consider them.

We conclude that the judgment should be affirmed, wth costs. All concur.