AUGUST STEINBRENNER, Plaintiff, *v.* FRANK UNGARO and Others, Defendants.

Supreme Court, Niagara County, June 27, 1929.

*Alan V. Parker*, for the plaintiff.

*W. L. Hunt*, for the defendants Ungaro.

WHEELER, Official Referee.   This action is brought to foreclose a mortgage on a farm located near the city of Lockport, N. Y.

The evidence shows that, about the months of July and August, 1927, the plaintiff was the owner of the farm mentioned, which was incumbered by a certain mortgage.   The defendants Ungaro were the owners of two properties located in the city of Niagara Falls, N. Y., one known as 305 Eleventh street in said city, and the other parcel as lot 9, on the south side of Ferry street, in that city.   These properties were also incumbered by mortgages.   Steinbrenner and the Ungaros arranged an exchange of these properties for the farm, and by deed dated September 1, 1927, Steinbrenner conveyed the

farm in question to the defendants Frank Ungaro and Rosa Ungaro, his wife, and the Ungaros in turn conveyed the Niagara Falls parcels to Steinbrenner. The conveyance of the farm also carried with it certain farm stock and implements on the place. No money was paid by either of the parties on the exchange of these properties, but the Ungaros did execute and deliver to the plaintiff Steinbrenner a mortgage on the farm to secure the payment of $5,447.26 as part of the purchase price of the farm. This mortgage was a second mortgage, and is the mortgage sought to be foreclosed in this action. The Ungaros took possession of the farm and remained on it for about a year. They became dissatisfied with their bargain, and claimed they could not make it pay.

In their answer they allege that they were induced to purchase by false and fraudulent representations as to its value, but no evidence was given on the trial of this action which would justify the referee in setting aside the exchange of properties on that ground. However, the Ungaros expressed dissatisfaction with their purchase and threatened to abandon the farm, and in September, 1928, had a talk with Steinbrenner to that effect.

Frank Ungaro testified that at the interview in question he asked for a return to him of the Niagara Falls properties, and that Steinbrenner in reply said that was impossible, as he had already sold the Ferry street house and lot. He further testified that Steinbrenner said to him he must not leave the stock on the farm uncared for and unprotected; that he thought he could sell the farm and had some one in mind who would take it; that he (Ungaro) might move into the Eleventh street house; that it was his, and he could have it, subject to an existing mortgage on the property; that Steinbrenner brought to inspect the farm one Antonio Michale, who agreed to buy it for $16,000; that thereupon Steinbrenner went to his own attorney and had him draw a contract for the sale of the farm. It was executed by all the parties named in it, and is attached to and forms a part of the answer of the defendants Ungaro.

The contract is dated September 6, 1928, is between Frank Ungaro and wife, as parties of the first part, Antonio Michale, as party of the second part, and Steinbrenner, as party of the third part. By its terms the parties of the first part agreed to sell and convey to Michale the farm in question for $16,000, to be paid for by Michale assuming a mortgage for $6,800 on the property and by executing to the Ungaros a second mortgage for about $6,500, and by conveying to said Steinbrenner certain property in Niagara Falls on Walnut avenue in that city, subject to a mortgage on it of some $6,300.

Steinbrenner figured on his part to discharge the second mortgage

held by him " on the land owned by the parties of the first part " and to accept a new second mortgage for said amount, this being in lieu of the mortgage previously given by the Ungaros and held by Steinbrenner. There was also an agreement by Steinbrenner to discharge a certain chattel mortgage held by him on the stock and tools on the farm. The Ungaros executed this agreement. The evidence is that, when they did so, the document was read to them. It is now contended by them that the instrument or contract in question did not and does not contain the whole agreement between them and Steinbrenner, in that no mention or provision is made in reference to the Eleventh street property, which it is claimed Steinbrenner was to convey to them pursuant to the alleged oral agreement and the defendants Ungaro ask that the agreement in question may be reformed, so as to embody such agreement or understanding. These defendants allege their readiness and willingness to perform said agreement when so reformed, and ask for a dismissal of the complaint.

The agreement in question gave Michale, the purchaser, the right to immediate possession of the farm, and he did in fact enter into possession, but has since abandoned possession, owing to the failure of the Ungaros to convey as they agreed, and the farm is now without an occupant. It further appears that certain judgments were entered and are now of record against the said Frank Ungaro, and it is claimed that the existence of these judgments is one of the reasons which render the Ungaros unable to give good title to Michale, the purchaser. In any event, the fact remains that the Ungaros have never carried out the agreement of September 6, 1928, and, so far as appears, nothing whatever has been done by them to carry it out.

The referee is unable to see how that agreement can be enforced by any party to it. In other words, the parties are left in just the position as though it never was made. If a reformation were had, the referee is unable to see how the defendants Ungaro could enforce it against Michale. If such is the case, he is unable to see how it could, if reformed, be enforced against Steinbrenner. Passing, however, the objections suggested, the question remains whether the agreement of September 6, 1928, is subject to a reformation, so as to incorporate in it an agreement between Steinbrenner and the Ungaros to convey to them the Eleventh street property. If such an oral agreement exists or existed, it in no way concerns Michale. If we study the agreement, it will be seen that the primary purpose of the instrument was to put into writing the terms of purchase of the farm by Michale. It recognizes the Ungaros as the owners of the farm. They are the parties to convey. It does

provide that Steinbrenner will accept a mortgage from Michale in place of that previously given by the Ungaros, which would release them from personal obligation and liability on the old mortgage, the one now being foreclosed. However, to get the benefit of such an agreement, the Ungaros must keep and perform their part, and that they have not done.

The agreement does not purport to finally adjust all matters between Steinbrenner and the' Ungaros. If any valid and binding obligations do exist between them, the agreement of September sixth does not in terms purport to take them away. So the referee holds that a reformation or modification of the agreement of September 6, 1928, is not necessary or proper in this action. If Steinbrenner and Michale had refused on their part to carry out the agreement, then the Ungaros might with propriety allege that they were to have been released on the obligation of their mortgage, but the default in carrying out the contract was that of the Ungaros, and not of Steinbrenner.

The parties are left in the same position they were, had the contract of September 6, 1928, never been made. The very most, then, that can be claimed is that Steinbrenner and Ungaro had a verbal agreement or understanding that the Ungaros were to get back the Eleventh street property and Steinbrenner the farm. We hardly think such an agreement can be spelled out from the testimony given. That will be discussed later. For the argument, however, we will assume such an oral agreement was in fact made.

But it was a purely oral agreement at best, and we are confronted by the statute, section 259 of the Real Property Law, which provides that " A contract   *   *   *   for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing. There was no writing in this case. If the oral agreement claimed is void under the statute, it cannot be enforced, and the fact that the defendants Ungaro took possession of the Eleventh street premises does not in our opinion make it enforcible. We know of no decision going to that extent. To hold otherwise would .be to defeat the plain purpose of the statute. It has been held that, although a parol agreement for the sale of lands has been in part executed, an action will not lie against the vendor to enforce the performance of the residue of the contract. (*Baldwin* v. *Palmer*, 10 N. Y. 232; cited in *Cagger* v. *Lansing*, 43 id. 550, 552; *Montauk Assn.* v. *Daly*, 62 App. Div. 101, 104.)

The referee is, therefore, unable to see how the court can reform any agreement by incorporating into it an oral agreement declared void by the statute. It is conceded the Ungaros have done nothing

save taking possession of the Eleventh street property. They have expended no money on it. They have paid no interest on the mortgages upon it. They have paid no taxes. They have paid no rent. They still remain the owners of the record title to the farm. They sold the farm to Michale after the alleged oral agreement was made with Steinbrenner. The referee is unable to see that they have been placed in any worse position than they were before the making of the alleged oral agreement. They may at any time, for all that appears, resume possession of the farm. While under certain conditions a court of equity will enforce a partly unexecuted oral agreement void under the statute (See *McKinley* v. *Hessen*, 202 N. Y. 24), nevertheless in this case the referee is unable to find such an existing state of facts as warrants such equitable relief.

The testimony given on the trial touching the talk had at the farm, when it is claimed Steinbrenner agreed to deed to the Ungaros the Eleventh street property, is conflicting in some respects. The witnesses for Ungaro testify in substance that Ungaro stated he could not make the farm pay, and was going to move off and abandon it, and wanted his Niagara Falls properties back, and that Steinbrenner told him he could have the Eleventh street place back, and to move into it, as it was vacant, but he could not give him the Ferry street property, as he had already sold it, and that to this Ungaro said, " All right," and did move back onto the Eleventh street property; that Ungaro was to take this subject to an existing mortgage, but as to this the testimony is very uncertain as to the amount of such a mortgage.

On the other hand, Steinbrenner testified that in August, 1928, he asked Ungaro for interest and money he had advanced, and Ungaro wanted to know what he could do, to which Steinbrenner replied the only thing to do was to find some one to take the farm off his hands; that he replied he was going to move off right away, and leave everything to him, to which Steinbrenner replied he could not do that, as there was live stock to care for, and some one must stay until he could find a man to buy the farm; that he found Marchesi, showed him the property, and told Ungaro of the deal he could make, and Ungaro agreed to it; that he told Ungaro he could move into the Eleventh street place, and they would adjust the different amounts, and get everything cleaned up, when it was found what the cost would be, and did not tell him he would give him the Eleventh street place; that after that he had the contract of September sixth drawn by his attorney; that it was read to Ungaro and his wife and they signed it. That it was read to the Ungaros is not denied. It may be they did not fully comprehend its import, but

that they signed remains a fact, and in that contract it is recited the Ungaros owned the farm and agreed to sell and convey to Marchesi.

In any event, to justify a reformation, the evidence must be of a very conclusive nature, and it impresses the referee whatever deal was in fact made, so much was left indefinite as to terms that it is difficult for the referee to construct a contract from what was said and done. In any event, the questions of law involved are such as compel the referee to find at most only an oral agreement, void under the statute, was made, and that the plaintiff is entitled to a judgment of foreclosure and sale under the mortgage set forth. Commenting further, it is to be noted that in the talk between Ungaro and Steinbrenner, as related by Ungaro and his witnesses, not a word was said touching the mortgage given by the Ungaros to Steinbrenner on the farm. It does not appear that there was any agreement it should be discharged or canceled. Nothing was said as to the personal property on the farm mortgaged by a chattel mortgage to Steinbrenner for $400, whether that was to be discharged, or whether Steinbrenner was to become owner of the stock and implements. Ungaro testified Steinbrenner objected to Ungaro vacating the farm and leaving the stock unprotected and uncared for. Was such care for the benefit of Ungaro, or for the benefit of Steinbrenner, the holder of the chattel mortgage? The fact remains that Ungaro did leave his brother-in-law in charge until Marchesi, the purchaser, under the agreement of September sixth, took possession.

These facts and circumstances are mentioned as showing how indefinite and uncertain the alleged oral agreement was, and how far it is left to the referee to spell out from the evidence some contract between the parties. To reform or incorporate some agreement, we think the evidence should be more definite and certain.

We have this further circumstance in this case: That there are existing judgments against Ungaro which are a lien against the farm property. He was unable to give a good title to Marchesi on account of this, and Marchesi by reason of that circumstance has abandoned his contract to purchase as per the agreement of September 6, 1928, and, while Ungaro testified he was ready to convey to Steinbrenner, it was not made to appear how he could do so with these outstanding judgments against him.

It is not claimed a word was said about these judgments at the time the alleged oral agreement was made, nor did the defendant undertake to show how he proposed to provide for them. If he could not do so for the purpose of carrying out his contract with Marchesi, it is difficult to see just how he could give title to the farm to Steinbrenner, unless Steinbrenner was to take title with them

still existing as a lien on the farm. Nothing, however, was said about them, either in the oral talk, or in the written agreement of September 6, 1928. I think we cannot assume the farm was to go back to Steinbrenner with the judgments unsatisfied. This but illustrates again that the alleged oral agreement as claimed was most incomplete in its terms and provisions, and the court, to work out anything like equity, would be compelled to supply terms and provisions not covered by the alleged oral agreement.

The only remaining solution seems to be to permit the plaintiff to foreclose the mortgage he now seeks to do. This course the referee finds he has the legal right to do, and directs judgment accordingly.