CORN v. BERGMANN et al.

(Supreme Court, Appellate Division, First Department. May 20, 1910.)

FRAUDS, STATUTE OF (§ 106*)—AGREEMENTS RELATING TO REALTY—AGREEMENTS TO LEASE.

A letter signed by defendant and addressed to plaintiff, stating that defendant thereby agreed to lease certain floors of a building from plaintiff at a certain rent, which offer plaintiff accepted in writing on the day it was signed by defendant, the lease being presented for execution two days thereafter, was sufficient within the statute of frauds (Real Property Law [Consol. Laws, c. 50] § 259).

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 211; Dec. Dig. § 106.*]

Appeal from Special Term, New York County.

Action by Henry Corn against Samuel Bergmann and another, dealing as Bergmann & Turkel. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

George Hahn, for appellant.
Corbitt & Stern (William H. Corbitt, of counsel), for respondents.

CLARKE, J. Plaintiff was building a loft building on West Eighteenth street. One Kohn, the general office manager in charge of the renting department for plaintiff, on September 17, 1907, had an interview with defendants, who were manufacturers of cloaks and suits, at their place of business, in reference to renting two lofts in the new building. After the interview, he telephoned to plaintiff,

---

telling him that defendants would not pay over $8,375 a year. Kohn testified:

"I wanted to make sure before closing the lease that that was satisfactory, and he told me that, if I could not do any better, I should not lose them as tenants, but should accept the agreement."

Whereupon the following paper was prepared:

"Bergmann & Turkel, Manufacturers of Ladies' and Misses' Cloaks and Suits, 725 & 727 Broadway.   Telephone, 3972 Spring.

"New York, September 17, 1907.

"Mr. Henry Corn—Dear Sir: We hereby lease from you the fifth and sixth floors in the building now being erected by you at 32, 34 and 36 West 18th street, New York City, for the term of five years, beginning Feby. 1st, 1908, at the annual rental of $8,375 (eight thousand three hundred and seventy-five dollars). The leases for same to be drawn in the usual form employed by you and to be executed as soon as presented to us.

"Yours truly                                   Samuel Bergmann.
"D. Turkel."

Kohn testified that he presented the paper to Mr. Corn on the same day and Mr. Corn wrote on it the same day, "Accepted.   Henry Corn." The leases were prepared and signed by Corn on the 19th of September, 1907, in the usual form used by him, and on the 20th Kohn took them to the defendants at about 1 o'clock. Their bookkeeper said they were not in, and told Kohn to come back at 4 o'clock. "I came back at half past 4 again, and saw Mr. Bergmann in the presence of his bookkeeper, and he told me he would not sign the leases. And I said: 'What is the matter?' Why would he not sign it now? And he said: 'Well, because you were not here yesterday.' And I said: 'That is no reason for you not to sign it. I did not promise to be here yesterday.' And so he said he would not sign it 'because we have changed our minds,' and I said, 'We will have to see about that,' and, as I was walking out, he called me back and he said: 'I tell you, we also heard that you would not be finished on time with that building, and that is why we would not sign it because we do not want to have trouble getting in a building that is not finished.' And I said: 'You have Henry Corn's signature that he will be finished on time, and he leases you the building from February 1st, and, if he does not deliver you the building on February 1st, you have a good claim against him.' And he says: 'We do not want any claim. If you will put in the lease in addition that you will pay us $250 a day for each day that the building won't be finished after February 1st, then we will consent to sign it.' And I said: 'It is absolutely out of the question. Your request is ridiculous.' I had shown him the leases."

There is a letter of the defendants to Kohn dated September 20th, which he swears he did not receive until the 24th, as follows:

"Considering that you were not satisfied with our application for premises situated at 32/38 West 18th st., and since you failed to call on us this day, as per your agreement with us—we therefore consider that we are forced to obtain another location."

There is also another letter of September 21st from the defendants:

"Our only reasons for refusing to accept the lease of 32, 34 and 36 West 18th st. are, that you failed to keep up to your agreement. You were to advise us not later than Thursday, 9/19/07, and you failed to do so. We therefore considered all propositions off. Trusting that you will not feel offended and that you will consider our act a fair one according to business principles, we are," etc.

On September 20th plaintiff wrote:

"Referring to your agreement dated September 17, 1907, for the leasing of the fifth and sixth floors in the building now being erected by me at 32, 34 and 36 West 18th street, for five years beginning Feb. 1st, 1908, at the annual rental of eight thousand, three hundred and seventy-five dollars ($8,375), the lease for which premises was to be drawn by me and signed by you as soon as presented to you for signature, I now desire to put myself on record to the effect that Mr. Kohn of my office has called on you with the leases ready for signature today at one o'clock p. m., and not having found either Mr. Bergmann or Mr. Turkel in their office and having been informed by your bookkeeper that you would be in at about 4 o'clock p. m., Mr. Kohn again returned at that time and presented to you the leases for execution, which you declined, the only reason being given by you that you had heard that I could not complete the said building by Feb. 1st, 1908. In view of your agreement to lease said premises and of my accepting you as tenants, I hereby notify you that the leases have been ready since this morning and that I will have my representative present them to you for signature as soon as I hear from you."

Bergmann testified:

"I did not make any objection to these two lofts in Mr. Corn's building after I signed the first paper. The only objection I made is because he did not come up in his time."

Corn himself went to see defendant on the 21st. The lease was again tendered and refused. Upon the motion to dismiss, the court said:

"There is no evidence that any copy of this paper signed by the plaintiff was ever delivered to the defendants, and there is no evidence that the defendants were notified that the plaintiff had signed or placed his signature on this paper. The paper, therefore, as a contract to lease, is void under the statute of frauds, because of the fact that there was no delivery or notification to the defendants that the plaintiff, Henry Corn, had signed or accepted this paper. It might be claimed that the tender of the leases was performance by him such as would take the contract out of the statute, as he presented the leases or tendered them within a few days thereafter, but it is to be noted that the lease was not to commence until February 1, 1908, and that the contract or paper provided that they were to be executed when presented to the defendants; that to give this contract such a construction as is claimed by the plaintiff would mean that he retained the option of entering into a lease until a day before the 1st of February, 1908, holding the defendants bound during that time and being himself not bound. Therefore, because no delivery of the duplicate of the agreement signed by Henry Corn was made to the defendants, and because no notification was given to the defendants by Henry Corn that he had accepted the contract and signed the same, I therefore dismiss the complaint."

A stipulation was entered into between the parties, the lofts having been subsequently rented for a less price, that the complaint might be amended and the damage placed at $9,875, the difference in the rent for the full term of the lease, preserving the defenses as originally set up. The answer set up the statute of frauds, and the sole question presented is whether the case comes within the statute.

Section 224 (now 259) of the real property law provides that:

"A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

In Pelletreau v. Brennan, 113 App. Div. 806, 99 N. Y. Supp. 955, reversing a judgment dismissing the complaint in an action to enforce specific performance of a contract for the sale of real estate, Gaynor, J., said:

"The contract contains every essential; i. e., it gives the names of the seller and the buyer, expresses the consideration and describes the land to be conveyed by the defendants. * * * That the land to be conveyed by the plaintiff as part consideration is not identified by the contract does not matter. It is only the seller who can raise the question of no written contract (Torres v. Thompson, 29 Misc. Rep. 526 [60 N. Y. Supp. 790]), and the plaintiff tendered performance. That the contract provides for the execution of a more formal contract does not detract from it. It is enforceable. Pratt v. Hudson River R. R. Co., 21 N. Y. 305; Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209 [39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757]."

In Sanders v. Pottlitzer B. F. Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757, the court quoted Selden, J., in Pratt v. H. R. R. R. Co., 21 N. Y. 305:

"A contract to make and execute a certain written agreement the terms of which are mutually understood and agreed upon, is, in all respects, as valid and obligatory, where no statutory objection interposes, as the written contract itself would be, if executed. If, therefore, it should appear that the minds of the parties had met, that a proposition for a contract had been made by one party and accepted by the other, that the terms of this contract were in all respects definitely understood and agreed upon, and that a part of the mutual understanding was that a written contract, embodying these terms, should be drawn and executed by the respective parties, this is an obligatory contract, which neither party is at liberty to refuse to perform."

And the court proceeds:

"In this case it is apparent that the minds of the parties met through the correspondence upon all the terms as well as the subject-matter of the contract, and that the subsequent failure to reduce this contract to the precise form intended for the reason stated did not affect the obligations of either party, which had already attached, and they may now resort to the primary evidence of their mutual stipulations. Any other rule would always permit a party who had entered into a contract like this through letters and telegraphic messages to violate it whenever the understanding was that it should be reduced to another written form by simply suggesting other and additional terms and conditions."

In Quinto v. Alexander, 123 App. Div. 1, 107 N. Y. Supp. 422, the court said:

"This action is to recover back $50 paid by the plaintiff to the defendant as a deposit on a contract for the purchase by the former of the latter of a lot of land. The defendant did not refuse performance, but the plaintiff claims the right to recover on the ground that the contract was not sufficiently expressed in writing to satisfy the statute of frauds. But this is wholly irrelevant. It is only the vendor who can raise that question. Even if the contract be oral, the vendee has to carry it out or forfeit the amount which

he has paid on a tender of performance by the vendor. The statute only requires that the contract of sale be reduced to writing and signed by the vendor. The vendee does not need to sign it."

Upon the evidence it stands uncontradicted that on September 17th, the very day of the signing by the defendants of the agreement to lease, it was accepted in writing by the plaintiff; that two days thereafter the lease contemplated by the agreement was drawn and executed by the plaintiff and presented to the defendants on September 20th. The sole question seems to be therefore, whether the defendants had a right to withdraw their offer or to cancel their agreement up to the time that they were notified of the acceptance. Montauk Ass'n v. Daly, 62 App. Div. 101, 70 N. Y. Supp. 861, cited by respondents, is clearly distinguishable because before the deed signed by the grantor was delivered to the agent, who had been negotiating for the grantee, the grantor was informed that his agency had expired, that the grantee would not take, and the deed was delivered under these circumstances to Lamb, who was not at the time the agent for Daly. There was no acceptance prior to the notification that the agency had been withdrawn, while in the case at bar there was a prompt acceptance in writing. The defendants were the principals who had themselves made the offer, and the completed contract in the precise terms of their accepted offer was presented to them. It was then that they refused to accept, and upon the sole and untenable ground that it had not been presented the day before.

Under the circumstances disclosed, we think that the written memorandum when accepted in writing by the lessor as it was upon the day upon which it was signed by the defendants satisfies the statute of frauds and became effective when so signed; that it was not necessary to deliver the said paper to the defendants. Ward v. Hasbrouck, 44 App. Div. 32, 60 N. Y. Supp. 391; citing Peabody v. Speyers, 56 N. Y. 230; Gibson v. Holland, L. R. (1 C. P.) 1. The General Term of Common Pleas in Kittel v. Steuve, 10 Misc. Rep. 696, 31 N. Y. Supp. 821, said:

"It was merely the note or memorandum of the contract on the part of the vendor required by the statute. It was not material that the owner did not subscribe at the time of the sale. * * * The note or memorandum, if signed by the vendor alone at any time after the sale, satisfies the statute. * * * As originally executed by the purchaser, it was insufficient, because it did not contain the name of the vendor. * * * The paper became of no effect whatever until the vendor subscribed it, and it then became his note or memorandum of the contract and as such satisfied the statute."

As the memorandum which was accepted provided that the leases should be executed "as soon as presented to us" and as they were presented within a reasonable time thereafter, to wit, three days, we think the provisions of the statute were complied with. It follows that it was error to dismiss the complaint, and the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.