**Dr. Werner OSWALD, Plaintiff-Appellant,**

v.

**Jane B. ALLEN, Defendant-Appellee.**

**No. 34, Docket 33053.**

United States Court of Appeals Second Circuit.

Argued Sept. 16, 1969.

Decided Oct. 14, 1969.

L. Reyner Samet, New York City, for plaintiff-appellant.

Sidney D. Rosoff, New York City (Parker, Duryee, Zunino, Malone & Carter, New York City, Stephen Charnas, New York City, on the brief), for defendant-appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Dr. Oswald, a coin collector from Switzerland, was interested in Mrs. Allen's collection of Swiss coins. In April of 1964 Dr. Oswald was in the United States and arranged to see Mrs. Allen's coins. The parties drove to the Newburgh Savings Bank of Newburgh, New York, where two of her collections referred to as the Swiss Coin Collection and the Rarity Coin Collection were located in separate vault boxes. After examining and taking notes on the coins in the Swiss Coin Collection, Dr. Oswald was shown several valuable Swiss coins from the Rarity Coin Collection. He also took notes on these coins and later testified that he did not know that they were in a separate "collection." The evidence showed that each collection had a different key number and was housed in labeled cigar boxes.

On the return to New York City, Dr. Oswald sat in the front seat of the car while Mrs. Allen sat in the back with Dr. Oswald's brother, Mr. Victor Oswald, and Mr. Cantarella of the Chase Manhattan Bank's Money Museum, who had helped arrange the meeting and served as Dr. Oswald's agent. Dr. Oswald could speak practically no English and so depended on his brother to conduct the transaction. After some negotiation a price of $50,000 was agreed upon. Apparently the parties never realized that the references to "Swiss coins" and the "Swiss Coin Collection" were ambiguous. The trial judge found that Dr. Oswald thought the offer he had authorized his brother to make was for all of the Swiss coins, while Mrs. Allen thought she was selling only the Swiss Coin Collection and not the Swiss coins in the Rarity Coin Collection.

On April 8, 1964, Dr. Oswald wrote to Mrs. Allen to "confirm my purchase of all your Swiss coins (gold, silver and copper) at the price of $50,000.00." The letter mentioned delivery arrangements through Mr. Cantarella. In response Mrs. Allen wrote on April 15, 1964, that "Mr. Cantarella and I have arranged to go to Newburgh Friday April 24." This letter does not otherwise mention the alleged contract of sale or the quantity of coins sold. On April 20, realizing that her original estimation of the number of coins in the Swiss Coin Collection was erroneous, Mrs. Allen offered to permit a re-examination and to undertake not to sell to anyone else. Dr. Oswald cabled from Switzerland to Mr. Alfred Barth of the Chase Manhattan Bank, giving instruction to proceed with the transaction. Upon receiving the cable, Barth wrote a letter to Mrs. Allen stating Dr. Oswald's understanding of the agreement and requesting her signature on a copy of the letter as a "mere formality." Mrs. Allen did not sign and return this letter. On April 24, Mrs. Allen's husband told Barth that his wife did not wish to proceed with the sale because her children did not wish her to do so.

■ Appellant attacks the conclusion of the Court below that a contract did not exist since the minds of the parties had not met. The opinion below states:

"* * * plaintiff believed that he had offered to buy all Swiss coins owned by the defendant while defendant reasonably understood the offer which she accepted to relate to those of her Swiss coins as had been segregated in the particular collection denominated by her as the 'Swiss Coin Collection' * * *."

285 F.Supp. 488, 492 (S.D.N.Y. 1968). The trial judge based his decision upon

his evaluation of the credibility of the witnesses, the records of the defendant, the values of the coins involved, the circumstances of the transaction and the reasonable probabilities. Such findings of fact are not to be set aside unless "clearly erroneous." Fed.R.Civ.P. 52(a). There was ample evidence upon which the trial judge could rely in reaching this decision.

■■ In such a factual situation the law is settled that no contract exists. The Restatement of Contracts in section 71(a) adopts the rule of Raffles v. Wichelhaus, 2 Hurl. & C. 906, 159 Eng. Rep. 375 (Ex. 1864). Professor Young states that rule as follows:

> "when any of the terms used to express an agreement is ambivalent, and the parties understand it in different ways, there cannot be a contract unless one of them should have been aware of the other's understanding."

Young, Equivocation in Agreements, 64 Colum.L.Rev. 619, 621 (1964). Even though the mental assent of the parties is not requisite for the formation of a contract (see Comment to Restatement of Contracts § 71 (1932)), the facts found by the trial judge clearly place this case within the small group of exceptional cases in which there is "no sensible basis for choosing between conflicting understandings." Young, at 647. The rule of Raffles v. Wichelhaus is applicable here.

As a second basis for decision, the Court below concluded that there was no sufficient memorandum to satisfy the Statute of Frauds. This is a rejection of Dr. Oswald's contention that Mrs. Allen's bare reference in her letter of April 15 to the delivery arrangements, even when read with the Dr. Oswald letter of April 8, is sufficient to satisfy the statute. The applicable statute at the time of the transaction, section 85, subd. 1(a) of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, states that there must be:

> " * * * some note or memorandum in writing signed by the party to be charged or his agent in that behalf,

sufficient to indicate that a contract to sell or a sale has been made between the parties and showing the quantity of goods sold or contracted to be sold * * *."

The original version of this statute, as enacted in 1911, had been construed rather strictly to require that all the terms of the agreement be in writing. 1960 Leg.Doc. No. 65(F) McKinney's 1960 Session Laws of New York, at 1826. The strictness of this rule was lessened by the doctrine that several letters or other writings could be resorted to for the agreed upon terms. Nevertheless, these writings had to be connected "either expressly or by the internal evidence of subject-matter and occasion." Marks v. Cowdin, 226 N.Y. 138, 145, 123 N.E. 139, 141 (1919). In Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953) the New York Court of Appeals adopted the rule "permitting the signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction." That case involved the refusal of an employer to increase the plaintiff's salary as called for in their employment agreement. The only evidence of the proposed salary increase was an unsigned office memo prepared by the defendant. When the employer relied upon the Statute of Frauds to defend the employee's suit for breach of contract, the Court held that the unsigned office memo, taken together with other writings signed by the defendant, constituted the "memorandum" required by the statute. The Court stated the law as follows:

> "All of [the terms of the contract] must be set out in the various writings presented to the court, and *at least one writing, the one establishing a contractual relationship between the parties, must bear the signature* of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed." (Emphasis added) 305 N.Y. at 55–56, 110 N.E.2d at 554.

■ In 1960 section 85 of the New York Personal Property Law was amended. L.1960, c. 287. The stated purpose was to relax the requirements for a writing.

"The [Law Revision] Commission believes that the statute should require only that the memorandum show the making of the contract between the parties and the quantity of the goods, and should provide further that errors or omissions do not render the memorandum ineffective, but that the contract shall not be enforceable beyond the quantity stated."

1960 Leg.Doc. No. 65(F) McKinney's 1960 Session Laws of New York, at 1826. This relaxation should be understood as directed toward the requirement that the memorandum contain all the material terms of the contract. It does not relax the requirement recognized in *Crabtree, supra,* that a writing which establishes a contractual relationship be signed by the party charged. Uniform Commercial Code section 2–201, upon which the revision of section 85 was based, is explained in the Official Comment as establishing "[o]nly three definite and invariable requirements as to the memorandum * * *. First, it must evidence a contract for the sale of goods; second, it must be 'signed,' a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity."

The 1960 revision of the Statute of Frauds allowed material terms such as price, delivery and quality to be supplied by parol. It thus removed the necessity for the careful piecing together of separate writings to supply written evidence of each term. The piecing together was to provide the terms of the contract—not the contractual status itself. The Courts of New York have refused to extend the doctrine of umbilical reference beyond its use in *Crabtree* as a device for supplying written evidence of material terms of a contractual status to a use as a device for evidencing a defendant's assent to a contractual status on terms in a writing supplied by a plaintiff. Solin Lee Chu v. Ling Sun Chu, 9 A.D. 2d 888, 193 N.Y.S.2d 859 (1959); Brause v. Goldman, 10 A.D.2d 328, 199 N.Y.S. 2d 606 (1960) aff'd mem., 9 N.Y.2d 620, 210 N.Y.S.2d 225, 172 N.E.2d 78 (1961). In Morris Cohon & Co. v. Russell, 29 A.D.2d 221, 225, 287 N.Y.S.2d 431, 435 (1968) the test was stated as whether the writing is "sufficient prima facie to charge him with the obligation sought to be enforced." The Court specifically stated:

" * * * the note or memorandum must be such that, standing alone, it completely represents an acknowledgement or admission of the party of the existence of an agreement, promise or undertaking which obligated him to pay or perform as alleged." 29 A.D. 2d at 225, 287 N.Y.S.2d at 435.

■ The only writing signed by the party to be charged is the April 15 letter of Mrs. Allen. It may not be taken as written evidence that a contractual relationship existed between the parties since there is no assurance arising from Mrs. Allen's letter that Dr. Oswald's letter represented an accurate rendering of a mutually agreed upon understanding. Brause v. Goldman, *supra.* In other words, the letter failed to fulfill the first and third requirements set forth in the Uniform Commercial Code Comment quoted above: to evidence the existence of a contract, and to specify a quantity.

Affirmed.

HAYS, Circuit Judge (concurring):

I concur in the result and in Judge MOORE'S opinion on the issue of the formation of the alleged contract.

I do not find entirely convincing the discussion of whether the documents involved are sufficient to satisfy the New York Statute of Frauds. It is, of course, unnecessary for us to rule on that point and I refrain from joining my colleagues with respect to it.