247 So.2d 838 (1971)
Myles DERDEN
v.
John L. MORRIS.
No. 46175.
Supreme Court of Mississippi.
May 17, 1971.
Carter & Carter, Columbus, for appellant.
Tubb & Stevens, West Point, for appellee.
HARPER, Justice:
This is a case involving the interpretation and application of Section 41A:2-201 Uniform Commercial Code, Mississippi Code of 1942 Annotated (Supp. 1967), the pertinent portion of the section involved in this appeal being as follows:
(1) Except as otherwise provided in this section a contract for the sale of goods for the price of Five Hundred Dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.
While the chancellor made no separate finding of fact, the final decree entered therein adjudged the parties to have entered into a contract for the sale of coins in the amount of $6,248.55 as of October 15, 1968, and found that appellant had repudiated the agreement in April 1969, at a time when the fair market value of the coins was $4,500.00. The court entered a decree in the amount of $1,814.05 in favor *839 of appellee, which sum represented the difference in the market value of the coins at the time of the alleged breach in April 1969, and the value of the coins at the time the alleged contract of sale was entered into on October 15, 1968, plus the sum of $18.00 representing rental payment on safety deposit boxes and an additional sum of $147.50 for coins which had been forwarded by appellee to appellant and accepted by him. Appellant, Myles Derden, and appellee, John L. Morris, apparently had known each other for some period of time and had, on numerous occasions, traded and sold coins. Appellee alleged that he and appellant had entered into an oral contract for the sale of coins in the sum above specified and in an effort to satisfy the statute of frauds provision of the Uniform Commercial Code, supra, offered into evidence a letter dated November 7, 1968, signed by appellant, addressed to appellee, which letter, in part, is as follows:
The arrangement is fine about the coins in West Point Bank. You can deposit the $500.00 check the 15th. of this Month then I will Mail you $300.00 checks each Month until May and increase them then. (R. 38-39).
The only proof as to the coins proposed to be purchased consisted of an itemized listing apparently compiled by the appellee at a time subsequent to the period appellee testified that he had forwarded such a list to appellant. The total cost of the listed items purportedly sold does not exceed $5,200.00. Other than letters between the parties introduced into evidence, all other proof consisted of the testimony of appellant and appellee, which testimony was in direct conflict as to the existence of a contract.
Appellant offered into evidence a letter dated January 24, 1969, from appellee to appellant, which letter is, in part, as follows:
In our Conversation, I refered [sic] to our coin sale agreement and discussed with him how we had misunderstood each other in our letters and Telephone calls.
* * *
You have offered to pay the safety Box Rent and I am satisfied regardless if it takes up to 2 or 3 years to complete the payments the Coins are safe. And all I want to know is are they sold so I wont [sic] have to think about doing that over.
* * *
Now if there is any coins you don't want at the quoted price, and some are a little cheaper now due to tax paying time I will release these from the agreement.
* * *
I have no intention of causing you any trouble nor did I ask the attorney to do a thing except to come to a clear understanding.
A careful reading of the two letters, together with the other letters introduced into evidence, reflects that the parties to this litigation dealt back and forth on various and sundry transactions and discloses that the parties were still negotiating as late as the letter of January 24, 1969.
The only assignment of error was that the alleged contract does not satisfy the statute of frauds provisions of the Uniform Commercial Code. While there are no Mississippi cases on this recently enacted statute, the official comment to the Uniform Commercial Code establishes three definite and invariable requirements as to the memorandum necessary to take a case outside the statute of frauds. In the first place, the memorandum must evidence a contract for the sale of goods; secondly, it must be signed by the party against whom enforcement is sought; and, thirdly, it must specify a quantity.
In view of the terms of the letter from appellee to appellant dated January 24, 1969, it is evident that the parties were *840 still negotiating. The letter offered into evidence by the appellee relating to an alleged oral contract was not a sufficient memorandum to satisfy the requirements of Section 2-201 of the Uniform Commercial Code. This Court is of the opinion that the parties were still negotiating and the lower court was in error in concluding that an oral contract for the sale of coins in the sum of $6,248.55 had been entered into on or about October 15, 1968. We therefore find that the chancellor was manifestly in error in awarding a decree in favor of appellee in the amount of $1,748.55. A somewhat similar situation arose in the case of Oswald v. Allen, 417 F.2d 43 (CCA 2d 1969) which involved the interpretation of Section 85, subd. 1(a) of the New York Personal Property Law, McKinney's Consol.Laws, c. 41. The relevant portion requires:
* * * some note or memorandum in writing signed by the party to be charged or his agent in that behalf, sufficient to indicate that a contract to sell or a sale has been made between the parties and showing the quantity of goods sold or contracted to be sold. * * *
In that case, Dr. Oswald had discussed with Mrs. Allen the proposed purchase of some Swiss coins. Dr. Oswald examined the collection called "Swiss Coin Collection" and some other Swiss coins from another collection and understood that he was buying all these Swiss coins, although Mrs. Allen thought that she was selling only the "Swiss Coin Collection." Dr. Oswald had written a letter to Mrs. Allen to confirm his purchase of all her Swiss coins at a price of $50,000.00. The letter had mentioned delivery arrangements through a Mr. Cantarella. Mrs. Allen responded by a letter of April 15, 1964, that "Mr. Cantarella and I have arranged to go to Newburgh Friday, April 24." 417 F.2d at 44. This letter did not otherwise mention the alleged contract of sale or the quantity of coins sold. The trial court agreed with Mrs. Allen's contention that she was selling only the "Swiss Coin Collection" and the Circuit Court of Appeals concurred in such finding and held that the oral understanding was not sufficiently incorporated in writing to comply with the Uniform Commercial Code's statute of frauds upon which Section 85 was based. In the case at bar, it is apparent that no understanding existed on January 24, 1969, some three months or more after the lower court determined that a parol contract of sale had been entered into, and, as a result, there was no contract for the sale of coins in the sum of $6,248.55.
However, the record discloses that appellant agreed to pay the $18.00 safety deposit box rent and had received and accepted certain specified coins of the value of $147.50 and as to these two items, the decree of the chancellor is affirmed.
Reversed and rendered in part and affirmed in part and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and SMITH, JJ., concur.