OPINION OF THE COURT
Millard L. Midonick, J.
Petitioners, decedent’s adult son and daughter, who are beneficially interested in the remainder of the estate as the only presumptive remaindermen, seek to prevent the executor from entering into an alleged contract of sale, and a sale in accordance with such alleged contract, of decedent’s real property in Pound Ridge, New York. The central issues are (1) whether the executor is bound by an enforceable contract for the sale of the property, (2) whether he is free by virtue of the Statute of Frauds, (3) whether the same terms were agreed upon even if orally, and (4) whether the sending by the seller of a formal but unsigned contract of sale was an indication of a condition that there be no binding contract unless it were subsequently signed by the seller (executor). The alleged purchaser has been permitted to intervene in this proceeding and has claimed *973 that the executor and he entered into an oral contract of sale. He further contends that a written memorandum of that contract is encompassed, for the first time, in the executor’s affidavit in response to this proceeding dated December 9,1980 (executor’s affidavit). On the other hand, petitioners and the executor contend that there never was even an oral contract, that the executor’s affidavit was not a sufficient memorandum and that the parties did not intend to be bound until a written agreement was entered into.
Section 5-703 of the General Obligations Law, commonly referred to as the Statute of Frauds, reads as follows: “2. A contract *** for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.”
The first issue is whether the executor’s affidavit in this litigation can serve as the memorandum as contemplated by the above subdivision, assuming that it had all of the requisite elements. Clearly pleadings and court affidavits can be a memorandum, writing, sufficient to bring an oral contract out of the Statute of Frauds (Cook v Barr, 44 NY 156; 56 NY Jur, Statute of Frauds, § 177; cf. Marshall v Ferris, 65 Misc 2d 405). However, in the Cook v Barr (supra) case the Court of Appeals remanded the case for a determination of fact of whether the answer was a sufficient memorandum to reflect a contract. Herein, such sufficiency is the second issue to which we now turn.
The intervenor’s (proposed purchaser’s) chronology of the facts as alleged are that: on November 20, 1980 the executor and intervenor “entered into an oral agreement for the sale of the property”; on December 1, 1980 they “orally agreed to modifications of their November 20 contract”; on December 3, 1980 the executor submitted a written contract to the intervenor for signature “which incorporated all of the terms of their oral agreement as modified, although higher offers had allegedly already been received”; on December 4, 1980 the intervenor “tendered the signed contract and a check for the required down payment to” the executor; and on December 9, 1980 *974 the executor submitted his affidavit in this proceeding which was commenced on December 5, 1980. In order to remove the contract from the requirements of the Statute of Frauds, the intervenor relies upon the executor’s affidavit of December 9. Consequently, it is necessary to review the affidavit to determine whether the executor sufficiently admits an agreement on November 20, 1980, modified on December 1,1980, which complies with section 5-703 of the General Obligations Law (Scheck v Francis, 26 NY2d 466; Marat Corp. v Abrams, 15 NY2d 1002; Crabtree v Elizabeth Arden Sales Corp., 305 NY 48; Brause v Goldman, 10 AD2d 328, affd 9 NY2d 620).
The intervenor specifically refers to a number of subdivisions of paragraph “second” of the executor’s affidavit to demonstrate that the executor admitted an oral contract. Those subdivisions do reflect as follows (Levine is the intervenor purchaser, Bixler is the real estate broker and the Meledandris are petitioners, who are the estate beneficiaries):
“(b) Background of acceptance of Levine Offer. The Petition fails to indicate that I orally agreed to the offer (the ‘Levine Offer’) by Lawrence Levine (‘Levine’) upon the advice and urging of Bixler and upon the advice and urging of both Christopher Meledandri and Nina Meledandri (the ‘Meledandris’).
“(c) The troublesome terms and conditions of the Levine Offer. As the Petition indicates, I was troubled by three conditions initially placed upon the Levine Offer by Levine:
“First, that the Property be conveyed in accordance with two contracts, each to convey part of the Property; second, that the down payment for the Property be five percent and that an additional five percent be paid by Levine to me if Levine defaulted under either or both of the proposed contracts; and third, that Levine’s obligation to fulfill the contracts hinge upon the receipt by Levine of a mortgage loan of $250,000.00 at the prevailing rate of interest.
“The Petition does not indicate that, upon my insistence after careful consideration of the troublesome terms and conditions, Levine waived all of the troublesome terms and *975 conditions and accordingly the arrangement for the transfer of the Property from me to Levine would involve one contract providing for ten percent of the purchase price as a down payment and would not include any mortgage financing conditions.
“(d) Levine’s condition for the preservation of the Levine Offer. I orally accepted the Levine Offer on Thursday, November 20,1980, subject to the resolution of the troublesome terms and conditions of the Levine Offer. At that time, Levine indicated to me that he was leaving for a brief vacation on Saturday, November 22,1980, and urged me to arrange for the preparation of the documents necessary to reflect the Levine Offer and to arrange for the execution thereof prior to his departure. I indicated to Levine that, because of my serious concern about the troublesome terms and conditions of the Levine Offer and the need to research certain questions relating thereto, I could not arrange for the execution of the documents required for the transfer of the Property to Levine before his departure.
“When I so informed Levine, he stated to me that (1) I might consider the Levine Offer ‘open and available’ (despite his right to withdraw the Levine Offer before the execution of a written document) until his return from vacation if I would agree (despite my right to withdraw from acceptance of the Levine Offer before the execution of a written document) not to accept another offer before his return, and (2) he would not preserve the Levine Offer if I did not so agree.
“In order to preserve the Levine Offer (which, because of my knowledge of Levine and of his reputation I was confident would be effectively preserved if I so agreed), I agreed not to accept another, offer before Levine’s return. At that time I did not know of any offers to purchase the Property preferable to the Levine Offer, and I did not have any reason to believe that any such preferable offer would be made while Levine was away or thereafter.
“(f) Tender of Levine Contract. On Thursday, December 4, 1980, Levine signed and tendered to me (1) a proposed contract (the ‘Levine Contract’) for the sale of the Property which I had previously submitted to him and which is free *976 of the three troublesome terms and conditions and (2) Levine’s check for the down payment required by the Levine Contract. (A copy of the Levine Contract is annexed hereto as Exhibit 1.) However, although not restrained by any court order, I did not sign the Levine Contract.”
Taking the entire affidavit into consideration, it is clear that the executor did not have an oral contract to sell the real property with the intervenor. An offer was conditionally made with an understanding of the need for the signing of a written contract. However, the intervenor purchaser imposed certain conditions which the executor was “troubled by” which resulted in a new offer by the purchaser replacing the former offer. In fact, it is clear that the executor never considered that the conditional offer would be binding and never actually accepted the first offer in spite of the use of the word accepted in subdivision (d) quoted above. Not only could Levine withdraw his offer but the executor could accept other offers later. The executor clearly states that he only agreed “not to accept another offer” while the intervenor was away. Consequently, there was no contract entered into on November 20, 1980, not even orally. If anything, this oral undertaking was at most an agreement not to make any agreement for a specified period of time.
Since the property had been for sale for a period of time,, the executor really expected that no other offers would come in and a written contract would be entered into and signed. However, other offers were made and he was in a quandary because of what he considered a moral obligation to the intervenor. The question is whether there was more than that.
The court notes that where parties clearly indicate an intent not to be bound until a written agreement is formally executed, no contract is binding upon them until such a written agreement is signed (Scheck v Francis, 26 NY2d 466, 469-470, supra; Brause v Goldman, 10 AD2d 328, 332, supra). Herein, the executor’s affidavit unmistakably envisioned such an act. He expected further negotiations after November 20, 1980, which actually took place, and that those negotiations might result in a single written contract. The oral statements, by two attorneys *977 who are the principals, while made in good faith, never were intended to bind the executor or the estate to a sale of the property. Only the written agreement was to be binding. To quote Professor Williston: “[TJhough parties have arrived at a definite understanding as to the terms of the proposed bargain, if they contemplate a writing as the first obligation binding upon them, their mutual understanding prior to the writing will not make a contract.” (13 Willis-ton, Contracts [3d ed], § 1548, p 121.)
Counter offers or conditional offers, if the conditions are not accepted in writing signed by the party to be charged, do not constitute a binding contract (cf. Goldbard v Empire State Mut. Ins. Co., 156 NYS2d 324, 330-331, reinstated and mod 5 AD2d 230). The facts as set forth by the intervenor purchaser reflect counteroffers and/or conditional offers on November 20, 1980. His withdrawal of conditions on December 1, 1980 is not binding on the executor or the estate until accepted by the executor in writing (Goldbard, supra).
The “moral obligation” which the executor felt bound to recognize is typical in real estate negotiations. Sales are negotiated orally, subject to written contracts requisite for obligation as a binding agreement to sell and buy. If sending an unsigned proposed contract of sale were to bind the seller, difficulty of reducing negotiations to writing would confuse the real estate marketplace.
This litigation has caused the higher bidder or bidders to withdraw their higher preliminary bids, at least for now. The attorneys for the adult beneficiaries (the petitioners), knowing of the higher bids, and of their withdrawal, wish the executor to retain title until the best offer can be considered, despite the chance of a market downturn for a price lower than the $400,000 offered by the intervenor. The executor, believing it to be his privilege not to sign the contract he “had previously submitted” unsigned, despite its return to him signed by the intervenor with a $40,000 check, wishes to follow the recommendations of his adult cestuis que trustent. This court will not instruct an executor in the exercise of his business discretion (Matter of Ebbets, 139 Misc 250) unless a conflict of interest faces the fiduciary (Matter of Hubbell, 302 NY 246; Matter of Scarborough *978 Props. Corp., 25 NY2d 553; Matter of Rothko, 84 Misc 2d 830, mod 56 AD2d 499, affd 43 NY2d 305). No conflict of interest or divided loyalty faced the executor herein, and consequently the issue before the court is simply whether or not the executor is legally subject to a contract obligation to sell due to his own alleged acceptance of the unsigned agreement he “had previously submitted” and due to his affidavit herein setting forth the course of negotiations. Upon these documents the proposed purchaser relies. Both the proposed purchaser’s later lis pendens in Westchester and his intervention before this court are stipulated to be subject to this court’s power to rule upon, under SCPA 209 (subd 10), in view of its jurisdiction to dispose of all matters involving the affairs of decedents, with full equitable powers to dispose of all justiciable issues relating to this controversy (cf. Matter of Dunham, 63 Misc 2d 1029, affd 36 AD2d 467, mot for lv to app den 29 NY2d 485, transfer to Surrogate’s Court mandated [even when not stipulated, as here] 40 AD2d 912; Matter of Rothko, supra; Matter of Young, 80 Misc 2d 937; see Matter of Raymond v Davis, 248 NY 67, 71-72).
The court finds and concludes that the executor’s affidavit quoted above does not constitute a memorandum sufficient to comply with section 5-703 of the General Obligations Law. If it be assumed that the said Statute of Frauds was satisfied with respect to sales terms, nevertheless there was no final agreement between the parties because of a condition precedent, to wit, the very fact that the title owner submitted a form of agreement, however complete, except as yet unsigned by him, thereby plainly indicating that there would be no binding contract unless and until his signature would be affixed thereto (13 Willis-ton, Contracts [3d ed], § 1548). Until then, his intention, expressed by his withholding of his signature, was to be free to refuse to sell. The executor never having signed his unsigned form of agreement, no contract has yet been made (Schwartz v Greenberg, 304 NY 250, 254; Harvey v General Cable Corp., 1 AD2d 79, 81, affd 2 NY2d 986; Manyon v Graser, 66 AD2d 1012, 1013; cf. Brause v Goldman, 10 AD2d 328, affd 9 NY2d 620, supra).
*979 In summary, the court finds that there is no enforceable contract for the sale of real property. Accordingly, the application is granted as indicated above.