■ T. GENE PRESCOTT, Respondent, v MERCHANTS REFRIGERATING COMPANY, INC., et al., Appellants. — Order and judgment (one paper), Supreme Court, New York County (Blyn, J.), entered on April 27, 1982, which, *inter alia,* denied defendants' motion for summary judgment and cancellation of a notice of pendency and granted the plaintiff's cross motion for partial summary judgment on the first and second causes of action and dismissed the affirmative defenses raised in the amended answer, is unanimously modified, on the law, to the extent of denying plaintiff's motion for partial summary judgment, reinstating the affirmative defenses and granting defendants leave to renew their application to cancel the notice of pendency, and otherwise affirmed, without costs. Special Term noted that the central issue in this action is whether as a matter of law a contract existed between these parties. The court found the existence and granted plaintiff partial summary judgment on the first two causes of action. We disagree and conclude that a substantial factual issue exists as to whether a binding agreement was indeed entered into. The defendant, Merchants Refrigerating Company, Inc. (Merchants), is a wholly owned subsidiary of defendant Pet Incorporated (Pet). Defendants are the owners and operators of a public cold storage warehouse located at Tenth Avenue and 17th Street in the City of New York. The defendants also own several other similar facilities in the metropolitan area and, pursuant to collective bargaining agreements, defendants are contributors to several union pension funds. The individual plaintiff is a trustee of one of these funds and by letter dated June 30, 1981, offered to purchase defendants' Manhattan facility. This letter specifically noted that, in order to consummate this proposed transaction, plaintiff would have to assume defendants' liability for withdrawal from the several union pension funds. Defendant Pet, by its executive

vice-president, in a letter dated July 17, 1981, answered that "this letter is to confirm to you that the terms set forth in your letter are acceptable * * * subject to the inclusion of the terms in a definitive agreement to be executed by both parties." Plaintiff places great reliance on this letter and argues that it amounts to an acceptance of his offer. However, 10 days after Pet's initial letter, that company's vice-president and general counsel forwarded a letter to counsel for plaintiff, which in pertinent part advised "[e]nclosed is a draft of the proposed contract * * * The draft has not been reviewed by anybody here or at Merchants". Negotiations continued with emphasis placed on defendants' withdrawing from the pension funds. Of consequence is a letter sent by Pet's general counsel to plaintiff's attorneys dated, August 2, 1981, in which defendants recognize that the withdrawal problem is "substantial". Thereafter, a meeting took place on September 22, at which the plaintiff offered to increase the purchase price for the subject property on condition that, *inter alia,* defendants delete from their demands a guarantee that the warehouse continue operating for a period of five years after date of sale. More importantly, defendants, in a letter of September 4, indicated their increasing concern with the withdrawal issue and lack of a solution to this problem. In this letter defendants stated they had nothing firm or in writing on the withdrawal question. Five days later, plaintiff delivered a release agreement from the pension fund manager, which was rejected by defendants. Plaintiffs then filed a notice of pendency covering the subject property and stated that there was a written agreement of purchase and sale entered into on July 17, 1981. Thereafter, the instant action was commenced in which plaintiffs, in their first two causes of action, sought specific performance of this July 17 contract. In the third cause of action plaintiffs sought delay damages. Special Term rendered the afore-mentioned determination and defendants now appeal. Clearly no formal agreement was ever entered into between these parties. However, this fact can be overlooked under certain circumstances. "[W]hen all the essential terms and conditions of an agreement have been set forth in informal written memoranda and all that remains is their translation into a more formal document, such an agreement will be capable of specific performance". (*Brause v Goldman,* 10 AD2d 328, 332, affd 9 NY2d 620.) However, on the facts before us, it is quite evident that from the outset all the essential terms had not been agreed upon. For example, plaintiff in his offer acknowledged that he would have to assume defendants' liability for withdrawing from the pension plans. Surely, there was no meeting of the minds on this issue since less than one month before this action was commenced, defendants expressed misgivings about the dearth of progress on this question. Failure to resolve this issue, which pervaded these negotiations, should have been a sufficient basis upon which to deny plaintiff's motion for summary judgment. Plaintiff, however, strenuously argues that defendants' letter of July 17 is an acceptance. To support this argument plaintiff urges that *Brown Bros. Elec. Contrs. v Beam Constr. Corp.* (41 NY2d 397) is controlling. This is simply not correct. Although *Brown Bros.* did determine that a course of conduct between the parties and their communications can, at times, support a finding of an enforceable contract, the *Brown Bros.* court stated (p 399) that: "In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds". At this juncture it should be pointed out that in the afore-mentioned case, the Court of Appeals was reviewing findings after a nonjury trial and not simply conflicting affidavits, as are now before this court. *Brown Bros.* demonstrates the need for a trial. In any event, when reviewing the acts and

communications of these parties, an issue of fact exists as to whether the July 17 letter and subsequent negotiations culminated in something more than a classic agreement to agree. In light of the above analysis, it was error for Special Term to determine these issues without the benefit of a trial. Concur — Ross, J. P., Asch, Markewich, Bloom and Milonas, JJ.