SOLOMON GOLDBARD, Appellant, *v.* EMPIRE STATE MUTUAL LIFE INSURANCE CO., Respondent.

First Department, March 4, 1958.

*Joseph B. Koppelman* for appellant.

*Vincent N. Donatone* for respondent.

BREITEL, J. Plaintiff appeals from a determination of the Appellate Term modifying a judgment rendered in his favor against defendant after trial without a jury in the Municipal Court. The Appellate Term modification, one Justice dissenting, reduced plaintiff's recovery from $2,800 to $800. That court granted leave for plaintiff to appeal to this court.

Plaintiff is the insured under an accident and health insurance policy providing monthly indemnity; defendant is the insurer. There were a number of legal and factual issues

passed upon by the trial court in a thoughtful and considered opinion. With one exception the Appellate Term affirmed these findings and conclusions of the trial court. It is with that exception alone that discussion is necessary. The other issues have been considered, but it is not necessary to discuss them, since this court is in agreement, to that extent, with both the trial court and the Appellate Term.

The issue which divided the Appellate Term is whether plaintiff insured settled and compromised his claims against defendant insurer prior to suit, with finality, and, as a consequence, is limited in recovery to the settlement figure of $800. The trial court found that insured was not so limited, but a majority of the Appellate Term disagreed.

It is concluded that the settlement negotiations between insured and insurer did not constitute either a substituted agreement or an enforcible executory accord; and, that therefore, insured is not prevented from pursuing his original claim. Hence, the order of the Appellate Term should, in effect, be reversed and the judgment of the Municipal Court reinstated, except that the latter judgment should be modified by reduction to the sum of $2,600, based on the concession of insured as to when liability under the policy commenced.

Insured is a barber by trade. Before his illness he ran his own one-man shop. In December, 1951 insurer issued its annually renewable policy to insured, who maintained his payments of premiums as required by the policy. In 1955 insured filed claims based upon a fungus hand infection from which he was suffering and which he asserted totally disabled him from engaging in his occupation. If true, he was entitled to monthly indemnity at fixed amounts under the policy. There then ensued a sequence of events in which some payments, vouchered as final, were offered by insurer, which insured refused to accept, believing they were less than that to which he was entitled. Insurer had misgivings concerning the nature of insured's illness and the extent of its disabling character. The parties remained in genuine dispute. In the early fall of 1955 insured made complaint to the State Insurance Department, and this triggered the occurrence upon which the main issue on this appeal is based.

While the disputants were before the department representative, insurer offered to settle the claims for $800, conditioned on a surrender of the policy, with consequent termination of its renewability. Insured, concededly, refused. He was willing to accept the $800, but not to surrender the renewable policy. However, later that day insured telephoned the department

representative and asked him to advise insurer that he would accept the $800, without requiring that the policy be renewed. The department representative relayed the call. Insurer thereupon wrote insured a letter asking him to call at the office with his policy for surrender and advising, in effect, that he would then be paid the $800 upon signing a release. Insured ignored the letter, and in due time started this action.

Insurer contends that on the facts related there was a " settlement and compromise " which limits insured's right of recovery. Insured, on the other hand, contends that there was no more involved than a new offer by insurer, not accepted by insured, or, at best, an executory accord which is unenforcible for lack of a writing as required by section 33-a of the Personal Property Law.

There is no magic to the words " settlement " or " compromise " in deciding whether a disputed claim has been discharged with such finality that no action may be brought upon it, but only upon the later agreement. As a matter of fact, the words are used interchangeably to describe either a subsequent agreement which discharges an earlier agreement, that is, a substituted or superseding agreement (*Morehouse* v. *Second Nat. Bank,* 98 N. Y. 503), or an executory accord which does not (*Larscy* v. *Hogan & Sons,* 239 N. Y. 298). Consequently, one does not advance the solution of any problem in this area by attaching either label, or presuming to conclude the discussion by making an initial determination that a negotiation has or has not achieved a " settlement " or a " compromise ". (6 Corbin on Contracts, § 1268.)

The question always is whether the subsequent agreement, whatever it may be, and in whatever form it may be, is, as a matter of intention, expressed or implied, a superseder of, or substitution for, the old agreement or dispute; or whether it is merely an agreement to accept performance, *in futuro,* as future satisfaction of the old agreement or dispute. The literature on the subject is voluminous. (Restatement, Contracts, §§ 417–419; 6 Williston on Contracts [rev. ed.], § 1838 *et seq.,* but esp. §§ 1841, 1846, 1847; 6 Corbin on Contracts, § 1268 *et seq.,* esp. § 1293, pp. 148–149; 1937 Report of N. Y. Law Rev. Comm., p. 210 *et seq.*; e.g., *Yonkers Fur Dressing Co.* v. *Royal Ins. Co.,* 247 N. Y. 435, 446; *Moers* v. *Moers,* 229 N. Y. 294; *Kromer* v. *Heim,* 75 N. Y. 574; *Atterbury* v. *Walsh Paper Corp.,* 261 App. Div. 529, affd. 286 N. Y. 578; *Ostrander* v. *Ostrander,* 199 App. Div. 437.) There is, then, no simple rule to be applied, as a matter of law, to determine in all given situations whether the subsequent agreement extinguishes the old.

Nevertheless, there are principles which occasionally assist in the determination of the question of intention where settlement negotiations have consummated in an agreement. The Restatement has described these as giving rise to presumptions. (See Restatement, Contracts, § 419, Comment *a.*) The New York Law Revision Commission takes the same view (1937 Report, p. 213). This court recently followed a similar analysis (*Blair & Co. v. Otto V.,* 5 A D 2d 276).

There has arisen, however, a certain class of cases which have given color to the view that some settlements are, as a matter of law, superseding or substituted agreements discharging the old obligations, without involving the determination of intention. Nothing said, or held, in those cases, however, warrants such a conclusion. In each there were circumstances pointed to, at least impliedly, as grounding the findings of intention to supersede the old agreement with the new. (See, e.g., *Langlois v. Langlois,* 5 A D 2d 75; cf. *Matter of Shaver,* 282 App. Div. 816; *Moers v. Moers,* 229 N. Y. 294, *supra*; *Ostrander v. Ostrander,* 199 App. Div. 437, *supra.*) The persistent principle to be applied is that of determination of the intention of the parties, as objectively manifested (*Reilly v. Barrett,* 220 N. Y. 170; *Matter of Campbell,* 256 App. Div. 693, affd. 281 N. Y. 685; *Atterbury v. Walsh Paper Corp.,* 261 App. Div. 529, affd. 286 N. Y. 578, *supra*).

Sometimes, of course, the matter of intention may be determined from documents exclusively, in which event the conclusion may be drawn, as a matter of law, by the court (e.g., *Moers v. Moers,* p. 301, *supra*). At other times, the determination of intention will depend upon conversation, surrounding circumstances, or extrinsic proof, in addition to documentation, if any exist, in which event the issue is one of fact, for the trier of the facts, be it court or jury (e.g., *Katz v. Bernstein,* 236 App. Div. 456; 6 Corbin on Contracts, § 1293, pp. 148–149).

The complex of facts — conversations, circumstances and documents, if there be any — presents the basis for making inferences. Both experience and logic suggest that some recurring factors are more indicative of intention than others. These have given rise to what have been earlier described as presumptions. So it is that the courts hasten to find an intention to have a substituted or superseding agreement discharging the old where the settlement has resulted in formalized papers with unequivocal language (as in *Blair & Co. v. Otto V., supra*), or in formalized or deliberate proceedings in court during the pendency of an action (see *Langlois v. Langlois, supra,* and the cases cited therein). These, of course, are not the only relevant recurring factors, or the only bases for presumptions; nor

would it be true to suggest that the search for evidentiary inferences has not been influenced by various policy considerations. (See Restatement, Contracts, §§ 418, 419, inc. comments; 6 Williston on Contracts [rev. ed.], § 1847; 6 Corbin on Contracts, §§ 1268, 1271, 1293.)

When, however, it is concluded that the settlement negotiations have resulted in no more than in an agreement to accept a future performance, albeit by a promise presently made, in future satisfaction of the old obligations — in this State especially — another principle of law intervenes. In New York, an executory accord not fully performed was, prior to the enactment of section 33-a of the Personal Property Law, unenforcible. It was not even available as a defense. This was the rule at common law. (1937 Report of N. Y. Law Rev. Comm., pp. 211–217; Restatement, Contracts, § 417, N. Y. Annotations.) Since the enactment of section 33-a an executory accord may be enforced, provided it is in writing and signed by the party to be held. If it remain unperformed, the promisee may elect to sue on the accord or the original obligation.

On this analysis, one does not reach the requirements for a writing provided in section 33-a, unless one has first found that the subsequent agreement is not one that supersedes or substitutes for the old one, and, therefore, extinguishes it. Such a subsequent agreement need not be in writing, unless, of course, a writing is required by some independent statute, such as a Statute of Frauds. But, if it is determined that the intention of the parties, expressed by their conduct or words, is that the subsequent agreement was designed to do no more than result in agreement that a future performance, albeit of a promise presently made, would be accepted as future satisfaction of the old obligations, then section 33-a comes into play and the subsequent agreement is unenforcible unless it is in writing and signed.*

Applying these principles to the facts in this case, the question is whether there was a substituted agreement, an executory accord, or no contract at all.

---

* Rationalists have been disturbed by the distinction in enforcibility between a substituted contract and an executory accord, and, more recently, by the requirement for a writing in order to enforce an executory accord and the absence of such a requirement for a substituted agreement. The reasons are historical, and the demarcation remains clear. (1937 Report of N. Y. Law Rev. Comm.; 6 Williston on Contracts [rev. ed.], § 1838 *et seq.*; 6 Corbin on Contracts, § 1271; *Langlois* v. *Langlois*, 5 A D 2d 75, *supra*.) The distinction, perhaps, can be supported, today, by the differences in deliberateness and extent of negotiation that may be expected to occur before the conclusion of an executory accord and a substituted agreement. This case may be illustrative of occasion for the distinction.

In the first place, we have a series of distinctly informal conversations with bargaining give and take. At no time are the bargainers, and the intermediary, agreeing on one occasion and in one place as to what the settlement should be. Instead, there was a triangular operation, the purportedly final terms of which were never expressed in the presence of all. Secondly, at no point do the conversations and communications converge on the precise terms, time or place for consummation. These were the facts that impelled the trial court to find no contract at all.

Thirdly, and crucially, there is nothing in the record which would support an inference that insured ever intended, let alone agreed, to accept only a promise of $800 to be paid in the future (as distinguished from an actual payment here and now) as a present discharge and satisfaction of the insurer's obligations.

Taking the three enumerated elements outlined above, they do not suggest the finality, the deliberateness, or the occasional formalization with which one associates substituted agreements and the specific intention to discharge pre-existing obligations. They do not attain the considered resolution of the entire dispute between the parties that moved the court in *Moers v. Moers* (*supra*) or in *Langlois v. Langlois* (*supra*) to find a superseding agreement. Indeed, they fall far short of the circumstances which the court held insufficient to infer a superseding agreement in cases like *Atterbury v. Walsh Paper Corp.* (261 App. Div. 529, affd. 286 N. Y. 578, *supra*).

Generally, it is assumed that one does not surrender an existing obligation for a promise to perform in the future (*Moers v. Moers, supra,* p. 300; see 6 Williston on Contracts [rev. ed.], § 1847, where it was said: " it is not a probable inference that a creditor intends merely an exchange of his present cause of action for another. It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed "; 6 Corbin on Contracts, §§ 1268, 1271, 1293). The Restatement would seem to have taken a somewhat more advanced position (Restatement, Contracts, § 419*), but it is explicitly stated to be merely a guide for interpretation in case of doubt. So treated it is akin

---

* " Where a contract is made for the satisfaction of a pre-existing contractual duty, or duty to make compensation, the interpretation is assumed in case of doubt, if the pre-existing duty is an undisputed duty either to make compensation or to pay a liquidated sum of money, that only performance of the subsequent contract shall discharge the pre-existing duty; but if the pre-existing duty is of another kind, that the subsequent contract shall immediately discharge the pre-existing duty, and be substituted for it." For applications of this rule in New York, see Restatement, N. Y. Annotations, to this section. (See, also, 6 Corbin on Contracts, § 1271.)

to a canon of construction, rather than a presumption that a court is bound to follow in the absence of proof to the contrary. Considering the inchoate and staccato negotiations that ensued in this case, culminating in a relayed telephone call, there is no warrant for inferring the making of a superseding agreement which thereby discharged insured's claims and his renewable policy.

Assuming then, although the trial court found to the contrary, that there was a contract, the factors present in this case, whether subsumed under some rule of interpretation or examined on an *ad hoc* basis, suggest that if any settlement was reached it was not a superseding or substituted agreement but at best only an executory accord. (Actually there is still another possibility applicable to this case, but it is not one urged here: the conversations which took place may have never achieved the finality of concluding a settlement. All negotiations in which parties verbally, and especially, if orally, concur on a settlement are not necessarily intended, instanter, to be binding. Just as often, in quite informal settings, the parties do no more than agree to agree, and consummation awaits some degree of implementation. This, of course, is also merely a matter of intention. [17 C. J. S., Contracts, § 49; cf. *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209].)

And, of course, on the principles earlier discussed, if all that resulted from the telephone conversations and the letter written by insurer was an executory accord, it was not cognizable under New York law for lack of a writing as required by section 33-a of the Personal Property Law.

Accordingly, the determination of the Appellate Term modifying the judgment rendered in favor of plaintiff against defendant in the Municipal Court by reducing the recovery from $2,800 to $800 should be modified, on the law and on the facts, to reinstate the judgment of the Municipal Court, except as modified, in accordance with the concession of plaintiff, by reduction to the sum of $2,600, together with costs and disbursements of this appeal to plaintiff-appellant.

BOTEIN, P. J., VALENTE, McNALLY and STEVENS, JJ., concur.

Determination of Appellate Term unanimously modified on the law and on the facts to reinstate the judgment of the Municipal Court, except as modified, in accordance with the concession of plaintiff, by reduction to the sum of $2,600, together with costs and disbursements of this appeal to plaintiff-appellant. Settle order.