**BRUCE REALTY COMPANY OF FLORIDA, Plaintiff,**

v.

**Louis BERGER, Harry Resnick and Peter Messina, as Executors of the Estate of Joseph Y. Resnick, Deceased, Defendants.**

**No. 70 Civ. 107.**

United States District Court, S. D. New York.

May 28, 1971.

508

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for plaintiff, by Ambrose Doskow and Joseph Zuckerman, New York City, of counsel.

Berger & Friedman, Ellenville, N. Y., for defendants, by Abraham Streifer, Kingston, N. Y., of counsel.

## OPINION

POLLACK, District Judge.

This is a motion for summary judgment in an action on a promissory note executed by defendants' testator.

Plaintiff is a Florida corporation with principal place of business in Florida. The defendants are the executors of the

estate of former United States Representative Joseph Y. Resnick. The decedent was and all the defendants are citizens of New York. Jurisdiction is based upon diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332.

In their amended answer the defendants raise the single affirmative defense of a settlement made with plaintiff subsequent to the commencement of this action. Accordingly, defendants believe they are entitled to summary judgment in their favor based on the terms of the settlement.

Plaintiff contends that the settlement is void under the applicable New York law because either the settlement was not in writing or else required written authority was not given to plaintiff's counsel to enter into the settlement. *See* N.Y. General Obligations Law § 15–501 (2). In addition, plaintiff claims that any otherwise enforceable agreement is voidable for defendants' failure to perform terms of the settlement within a reasonable time. *See* N.Y. General Obligations Law § 15–501(3).

The evidence presented to the Court shows the following:

On June 13, 1969 plaintiff agreed to sell property in Jamaica to the decedent for $815,000, of which the sum of $733,-500 was represented by a note, secured by a mortgage on the property. The land was conveyed to Twin Reef Acres Limited, a Jamaica corporation wholly owned by the decedent. Twin Reef Acres was described in the documents as the mortgagor and the decedent was joined therein as "surety" and also described in the documents as the "principal debtor".

Interest on the unpaid principal at the annual rate of 8% was payable quarterly with an acceleration clause applying to both principal and interest. The first interest payment was due on October 31, 1969.

Representative Resnick died on October 6, 1969 and the estate failed to pay the interest due at the end of that month. In January, 1970 plaintiff commenced this action demanding the full amount of principal and accrued interest from the defendants pursuant to the acceleration clause; there was no attempt to foreclose on the land in question.

Soon after issue was joined, a settlement was proposed and accepted in principle. In essence, plaintiff's president agreed to accept all the shares in Twin Reef Acres, whose sole asset apparently is the land in question, and in return, plaintiff was to release the Resnick estate of all liability on the note and discontinue the instant action. Each side was to pay one-half of the cost of transfer stamps and title registration with respect to the mortgaged property. After long delays in implementing the agreement reached, lasting about a year, the plaintiff decided to back out of the settlement and made the present motion for summary judgment on the note.

*Lack of Writing Executed by Plaintiff*

Since the jurisdiction of the Court is based on diversity, the substantive law of New York must be applied. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). In New York an executory accord must be in writing:

An executory accord shall not be denied effect as a defense or as the basis of an action or counterclaim by reason of the fact that the satisfaction or discharge of the claim * * * which is the subject of the accord was to occur at a time after the making of the accord, *provided the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party or his agent.* N.Y. General Obligations Law § 15–501(2) (emphasis added).

This provision has been construed by New York courts to mean that an oral settlement cannot be enforced. *E. g.*, Chemical Bank New York Trust Co. v. Staten Island Board of Jewish Education, Inc., 23 A.D.2d 833, 259 N.Y. S.2d 501 (1965); Goldbard v. Empire State Mutual Life Insurance Co., 5 A.D. 2d 230, 235, 171 N.Y.S.2d 194 (1958).

The parties are in sharp dispute whether a sufficient written promise exists, evidencing the executory accord, signed by the plaintiff or its agent.

Two months after this action was commenced, a meeting was held in which the plaintiff's counsel, defendants' counsel and one of the defendants reached the general terms of a settlement. Plaintiff would receive the property in question in exchange for releasing the estate from liability. It was not decided at this March 11, 1970 meeting whether the settlement would take the form of a simple conveyance or of a transfer of all the stock in Twin Reef Acres Limited whose only asset is the land in question.

On March 16, 1970 plaintiff's counsel wrote his version of the proposed terms of the settlement to defendants' counsel; the first page of the letter inadvertently contained the date March 13, 1970 while the second page is correctly dated. This letter contains all the terms of the alleged settlement except one.[1] The disputed point in the letter of plaintiff's counsel of March 16, 1970 was "[t]hat the executors acknowledge the indebtedness of the estate for one-half of the sum of $18,716.50 paid for the transfer stamps and title registration with respect to the mortgaged property and allow the claim of Bruce Realty Company therefor in the amount of $9,358.25."

Defendants' counsel telephoned plaintiff's counsel two days later and an agreement was reached on the disputed point and defendants' counsel wrote plaintiff's counsel a confirming letter the next day, March 19, 1970. This letter stated that in lieu of allowing plaintiff's claim against the estate, the consummation of the settlement would be without prejudice to the filing of a claim against the estate for $9,358.25. The March 19th letter from defendants' counsel is a confirmation of the agreement on all points.

On March 26, 1970 the Court wrote to both parties asking about the status of the litigation. Plaintiff's counsel wrote to the Court on March 31, 1970 that the case had been settled.[2] The letter said in pertinent part:

The parties have agreed * * * on the terms of a settlement, under which the property securing the obligation sued on would be transferred by defendants to plaintiff. The mechanics have to be worked out by the parties' attorneys in Jamaica, where the land securing the obligation is situated.

Plaintiff now contends that the statute involved has not been satisfied; that there is no writing signed by plaintiff or its agent accepting the term last agreed on described in the March 19, 1970 letter by defendants' counsel. However, an analysis of the record before the Court reveals adequate writings to bring the settlement out of the Statute of Frauds under applicable New York law.

In Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 55, 110 N.E.2d 551 (1953), Fuld, J. (now Chief Judge) held that the New York Court of Appeals had adopted the rule "permitting * * signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction." Under this doctrine, all of the terms of the agreement must be set out in writing and at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged,

---

1. Plaintiff's counsel proposed in the March 16th letter that the stock in Twin Reef Acres be transferred to plaintiff's president for the sum of $10 and simultaneously plaintiff would release the Resnick estate from liability on the mortgage and dismiss the instant action. The proposal was contingent on plaintiff's receipt of advice that the transaction was appropriate under Jamaica law and that satisfactory assurance be given that Twin Reef

Acres Limited held only the land in question and had engaged in no other transactions and had no liabilities except for taxes on the property in question. These two conditions were easily met but a third, described in the text above, was not.

2. The Court notes that on July 8, 1970 plaintiff's present lawyer told the Court by telephone that as far as his firm was concerned the case was settled.

while any unsigned document must on its face refer to the same transaction as that set forth in the one that was signed. *See also,* Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969).

Plaintiff seeks to distinguish *Crabtree* on the ground that all the writings there considered were written by the party against whom the agreement was enforced while in the instant case the crucial March 19, 1970 letter was written by the party seeking to enforce the executory accord. The Second Circuit has said that "[t]he Courts of New York have refused to extend the doctrine of umbilical reference beyond its use in *Crabtree* as a device for supplying written evidence of material terms of a contractual status to a use as a device for evidencing a defendant's assent to a contractual status on terms in a writing supplied by a plaintiff." Oswald v. Allen, 417 F.2d 43, 46 (2d Cir. 1969), aff'g 285 F.Supp. 488 (S.D.N.Y.1968) (Pollack, J.).

However, the cases cited by the Second Circuit and by the plaintiff herein are distinguishable from the instant situation. For example, in Solin Lee Chu v. Ling Sun Chu, 9 A.D.2d 888, 193 N.Y.S. 2d 859 (1959) the unsigned document "was prepared by the plaintiff's attorney and offered to the defendant for signature *but he refused to sign*". (emphasis added) In Brause v. Goldman, 10 A.D.2d 328, 331, 199 N.Y.S.2d 606 (1960), aff'd without opinion, 9 N.Y.2d 620, 210 N.Y.S.2d 225, 172 N.E.2d 78 (1961) the only writing containing the formal written agreement contemplated by the parties was a 30 page lease; before the lease was signed the parties to be charged informed the plaintiff that they declined to go forward with the transaction.

The Courts of New York do not apply *Crabtree* and its progeny in a mechanical manner by looking only at who prepared the unsigned writing. Rather, the crucial issue is whether the party to be charged assented to it. If the party to

be charged wrote the unsigned writing, then his assent is clear. But when the party seeking to enforce the agreement wrote the unsigned document, it is only in an unusual situation that the other party's acceptance or adoption of it can be shown. *See* Behrman v. Peoples Camp Corp., 30 A.D.2d 973, 294 N.Y.S.2d 658 (1968), aff'd without opinion, 25 N.Y.2d 920, 304 N.Y.S.2d 853, 252 N.E. 2d 285 (1969). This is such a case. Although the Court must rely upon a document prepared by defendants to enforce the settlement against the plaintiff, the plaintiff not only did not reject the letter in question, but it was adopted and affirmed by plaintiff a short time later in a letter to this Court. *Cf.* N.Y. Uniform Commercial Code § 8–319(c).

■ Plaintiff's letters of March 16th and March 31st along with defendants' letter of March 19th are an integrated writing sufficient to take the settlement out of the Statute.

■ However, this part of the opinion does not rest solely on the above. Any doubt about whether there is an adequate writing is disspelled by an affidavit made by plaintiff's counsel in connection with this motion. In his affidavit, the attorney states *inter alia:*

On March 18, 1970 I talked on the telephone with both Mr. Streifer [defendants' counsel] and Mr. Berger, one of the defendant executors. They objected to the condition numbered (3) in my letter [of March 16, 1970] and suggested the substitution of a provision that the settlement would be without prejudice to the filing of a claim against the estate for the amount in question. I telephoned Mr. Farkas [plaintiff's president] and he authorized me to accede to that change. I did so orally in telephone talks with both Mr. Streifer and Mr. Berger, and Mr. Streifer then wrote me the letter dated March 19, 1970 confirming our conversation.

The affidavit is clearly sufficient to take the settlement out of the Statute of Frauds. Morris Cohon & Co. v. Russell,

23 N.Y.2d 569, 573, 297 N.Y.S.2d 947, 245 N.E.2d 712 (1969); 56 N.Y. Jurisprudence, Statute of Frauds § 177 (1967); *Cf.* N.Y. Uniform Commercial Code § 8–319(d); Oregon Ridge Dinner Theatre, Inc. v. Hamlin, 253 Md. 462, 253 A.2d 382 (1962). As the New York Court of Appeals aptly explained in *Morris Cohon & Co.*:

> The Statute of Frauds was designed to guard against the peril of perjury; to prevent the enforcement of unfounded fraudulent claims. But, as Professor Williston observed:
>
> "The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made * * *."
>
> In the instant case, the peril of perjury is largely, if not entirely, absent. 23 N.Y.2d at 574, 297 N.Y.S.2d at 952, 245 N.E.2d at 717.

### Authority to Enter into the Settlement

Plaintiff next contends that even if the settlement was taken out of the Statute of Frauds by a sufficient writing, the writing was executed by plaintiff's attorney who was not authorized in writing to make a promise for the plaintiff and New York law requires such authority to be in writing.

N.Y. General Obligations Law § 15–501(2) states:

> If executed by an agent, any promise required by this section to be in writing *which affects or relates to real property or an interest therein* as defined in section 5–101 in any manner stated in subdivisions one or two of section 5–703 of this chapter shall be void unless such agent was thereunto authorized in writing. (emphasis added).

While the proposed transaction took the form of a stock transfer, plaintiff points out that its effect would be to convey the land owned by the mortgagor, Twin Reef Acres Limited, to plaintiff's president. In return, plaintiff would simultaneously release defendants from liability on the mortgage, thus making the sale of stock inextricably related not only to the transfer of ownership of the property, but to the extinguishment of the mortgage obligation.

The statutes in question require authority to be in writing when an "estate or interest in real property * * [is] created, granted, assigned, surrendered or declared." N.Y. General Obligations Law §§ 5–703(1), 5–101(2). It is clear that this language applies to releases of mortgage obligations. But the transaction in question is not a release of a mortgage obligation and therefore the authority for plaintiff's attorney to enter into the settlement did not have to be in writing.

The original mortgage clearly defines Twin Reef Acres Limited as the mortgagor and Bruce Realty Company of Florida as the mortgagee. Under the terms of the proposed settlement the mortgagee would continue to be Bruce Realty and the mortgagor Twin Reef Acres. The transaction would not effect a surrender of the mortgage but only an extinction of the defendants' liability as surety and principal debtor on the note accompanying the mortgage. The transfer of the stock by itself does not come within the provision that requires written authority since legal title of the land would continue in Twin Reef Acres.

All the transactions in cases cited by plaintiff relate either partially or completely to modifications of one sort or another of interests in real property; none relate merely to the release of a surety's obligation on the note accompanying a mortgage. Moreover, for what value it may be, the form of the transaction was not arranged solely to avoid the Statute of Frauds; the effect of that law did not enter into the consideration of the contracting parties when the transactions were effected.

The record herein plainly shows that plaintiff's attorney executed the promises on the express authority of his client. In an affidavit submitted by plaintiff's president he says "I did authorize a settlement * * *" *Cf.* N.Y. Uniform Commercial Code § 8–319(d); Oregon Ridge Dinner Theatre, Inc. v. Hamlin, 253 Md. 462, 253 A.2d 382 (1969).

*Failure to Consummate the Settlement*

The plaintiff further argues that even if there was an enforceable executory accord, the defendants by delay in tendering performance have not fully performed all the conditions and therefore the accord is voidable. N.Y. General Obligations Law § 15–501(3).

■■ The agreement fixes no time for performance. The applicable New York law therefore fixes performance within a reasonable time. A. B. Murray Co. v. Lidgerwood Mfg. Co., 241 N.Y. 455, 457, 150 N.E. 514 (1926). What constitutes a reasonable time is a question of fact. Green Point Savings Bank v. Central Gardens Unit No. 1, Inc., 279 App.Div. 1078, 112 N.Y.S.2d 371 (1952). The plaintiff claims that the long lapse of almost a year before defendants were able to perform their part of the settlement agreement is unreasonable although permission of the Bank of Jamaica and ancillary probate proceedings in Jamaica were needed.

Even though it is probable that the time lapse was not unnecessarily long and that a substantial part of any avoidable delay was caused by plaintiff's two changes of counsel, there is a triable issue on this point. A hearing on this aspect will be held forthwith. Counsel are directed to appear with their witnesses on Friday, June 4, 1971 at 10 A.M. The plaintiff's motion for summary judgment is denied. It sufficiently appears without substantial controversy that the parties entered into a valid executory accord settling this action on the terms set out above. The further proceedings herein are directed to the

question of the performance thereof within a reasonable time under all the facts and circumstances relevant to the subject matter. F.R.Civ.P. 56(d).

So ordered.