Ronald BRADSHAW, dba B & B Drilling Company, Plaintiff and Respondent,

v.

Wayne J. BURNINGHAM, et al., Defendants and Appellants.

No. 18385.

Supreme Court of Utah.

Sept. 30, 1983.

---

1. U.C.A., 1953, § 35–1–1, *et seq.*

Wayne J. Burningham, pro se and Gary A. Weston, Salt Lake City, Russell Gallilan, St. George, for defendants and appellants.

Philip C. Pugsley, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The plaintiff in this action brought suit to foreclose a mechanic's lien on certain property in Washington County. The action arose out of a dispute as to money owing on a contract to drill a water well. The trial court entered judgment and a decree of foreclosure in favor of the plaintiff, from which the defendants appeal. We affirm the judgment of the trial court.

On December 7, 1979, the plaintiff, a well-driller, entered into a contract to drill a water well for the defendants. The contract stated that the plaintiff would drill a well 500 feet deep and 12 inches in diameter, with 12 inch casing to the depth of the well, at a cost of $35 per foot. The agreement included a separate rate of $20 per hour for the drilling of test holes. In the event that igneous rock or bedded material was encountered and the driller was not able to drill at least 4 feet per hour, the contract stated that the driller would charge by the hour at a rate of $50 per hour. The defendants were to pay $5,000 initially and the balance on completion of the well. The contract expressly disclaimed any guarantee of "the capacity of said well, nor the quality of water contained therein, if any."

The well had been partially drilled when the drillers encountered a steel object in the hole. There is no evidence showing how the object actually got into the hole, but the obstruction ultimately prevented the completion of the well. The dispute in this case centers on the payment of the costs incurred in drilling this unfinished well.

Following a decision to abandon the well, the parties entered into a written compromise agreement that determined the amount to be paid ($6,300) by defendants on the first well and set the terms under which the plaintiff would drill a new test hole. In the event the test hole indicated water would be found, the agreement stipulated a somewhat reduced rate for drilling a second well. The language of the agreement expressly incorporated all non-modified terms of the original contract.[1] A second well was in fact drilled and completed, but a dispute again arose over the payment due plaintiff. On the basis of the unpaid balance, the plaintiff filed the mechanic's lien on which this action is based.

At trial, both parties argued the theory of accord and satisfaction, asserting that the compromise agreement constituted an executory accord. The plaintiff claimed that due to defendants' breach of the compromise agreement, the plaintiff was entitled to sue on the original contract, which

---

1. The contract language reads: "All terms of this contract shall be as indicated above, with the old hole contract being still effective except for changes mentioned herein."

he in fact did.[2] The defendants responded by claiming that on the basis of the first contract they were only obligated to pay for costs incurred in drilling a single completed well, which was the second well.

The trial court specifically rejected the theory of accord and satisfaction and held that the compromise agreement was a binding amendment to the original contract between the parties. The court found that although originally there were valid arguments on both sides as to the responsibility for costs involved in drilling the unsuccessful first well, once the compromise agreement was executed, it bound both parties. The court further found that the plaintiff was entitled to receive $5,000 (original payment of first well), plus $6,300 (settlement amount on first well), plus $16,700 (payment for second hole), minus $20,412.90 (amount found to have been paid by defendants)—the final figure being $7,587.10. On appeal the defendants reassert the theory of accord and satisfaction, claiming that the plaintiff elected to sue on the underlying claim and, therefore, the compromise agreement had been rescinded. The defendants then claim that on the basis of the original contract they are only responsible for payment for the completed well. To support this claim, the defendants argue that the well-driller should be responsible for the costs involved in drilling the abandoned well.

■ The dispositive issue is whether the parties' compromise agreement was a binding modification of their original contract or an executory accord. This distinction is important because of the different contractual rights available to the parties under each analysis. "Where ... a modification is agreed upon, the terms thereof govern the rights and obligations of the parties under the contract, and any pre-modification contractual rights which conflict with the terms of the contract as modified must be deemed waived or excused." *Rapp v. Mountain States Tel. & Tel. Co.,* Utah, 606 P.2d 1189, 1191 (1980) (citations omitted).

If, therefore, the compromise agreement was an amendment to the original contract, it will, in conjunction with those terms of the original contract it does not contradict, create a substitute contract and thereby extinguish any rights under the original contract now defined by the amendment. *See generally* 15A Am.Jur.2d *Compromise and Settlement* §§ 3, 36 (1976).

■ An executory accord, on the other hand, "is an agreement that an existing claim shall be discharged in the future by the rendition of a substituted performance." 6 Corbin *Contracts* § 1269 at 75 (1962). The agreement does not discharge the existing claim; it is discharged by the substituted performance. If there is a failure to perform the executory accord, the creditor may elect to proceed either upon his original claim or the accord. *L & A Drywall, Inc. v. Whitmore Construction Co.,* Utah, 608 P.2d 626, 629 (1980).

■ Authorities unanimously agree that the question of whether a new agreement is a substitute contract or an executory accord depends upon the intention of the parties. *National American Corp. v. Fed. Rep. of Nigeria,* 448 F.Supp. 622, 643 (S.D. N.Y.1978); *Goldbard v. Empire State Mutual Life Insurance Co.,* 5 A.D.2d 230, 171 N.Y.S.2d 194, 199 (1st Dep't 1958); 6 Corbin, *Contracts* § 1293 at 190 (1962). Where documents conclusively demonstrate the intent of the parties, the issue can be decided as a matter of law. *National American Corp. v. Fed. Rep. of Nigeria* at 643, and *Goldbard v. Empire State Mutual Life Insurance Co.* at 199–200. "Interpretation of a written contract is ordinarily a question of law, and this Court need not defer to the trial court's construction, but will make its own independent interpretation of the contract terms." *Deschler v. Fireman's Fund Am. Life Ins. Co.,* Utah, 663 P.2d 97, 98 (1983) (quoting *Jones v. Hinkle,* Utah, 611 P.2d 733, 735 (1980)).

■ The language of the compromise agreement in this case distinctly states the

---

**2.** Plaintiff claimed that the per-hour clause of the original contract applied during the period

when drilling was virtually halted due to the existence of the metal object in the well.

parties' intention to amend their original contract. It specifically states: "old hole contract being still effective *except for changes mentioned herein.*" (Emphasis added.)

Furthermore, the situation of the parties after the abandonment of the first well was appropriate for a substitute contract. The Restatement of Contracts 2d states "a court is less likely to conclude that an obligee was willing to accept a mere promise in satisfaction of an original duty that was clear than in satisfaction of one that was doubtful." Restatement (Second) of Contracts § 279, Comment c (1981). In this case the extent of the duties the parties owed each other under the original contract was uncertain. The original contract did not address the question of which party should pay for an attempted well abandoned due to an unexplained obstruction by a metal object. The trial court found that under the original contract there were good arguments on both sides as to responsibility for the unsuccessful first well. Given their uncertain positions under the original contract and their desire for a completed well, it was reasonable for the parties to settle their differences and solve this dispute by amending the original contract to permit completion of a working well as the court found was the case.

We hold that by their compromise agreement the parties amended their original contract. The new contract, which incorporated portions of the original contract, wholly defines the rights and duties of the parties toward each other. The findings of the trial court were therefore correct.

Affirmed. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.