**NYCAL CORPORATION, Plaintiff,**

v.

**INOCO PLC and Downshire N.V., Defendants.**

**No. 96 Civ. 7159 (LAK).**

United States District Court, S.D. New York.

Jan. 13, 1997.

Jeffrey E. Glen, DeForest & Duer, for Plaintiff.

Jeffrey L. Braun, Rosenman & Colin L.L.P., for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiff in this dispute claims in substance that it was duped by the defendants into purchasing stock of Gulf Resources and Chemicals Corporation ("Gulf") in 1991. The same controversy is the subject of parallel litigation in the United Kingdom. The matter is before the Court on the defendants' application to supplement their motion to dismiss the complaint or stay the action by adding to the grounds asserted the defense of lack of jurisdiction over the person. This seemingly minor procedural request, however, raises an important and unsettled question concerning the proper construction of Rule 12 of the Federal Rules of Civil Procedure which has potentially substantial consequences for this litigation.

*Facts*

*The Underlying Dispute*

On May 24, 1991, plaintiff and defendants entered into a stock purchase agreement

("SPA") pursuant to which defendants agreed to sell plaintiff their Gulf shares. The SPA provided that the defendants irrevocably consented to personal jurisdiction in the State of New York "for the purpose of any litigation with respect to this Agreement" and irrevocably appointed the New York law firm of Carter, Ledyard & Milburn as their agent in the State of New York to accept service of process. (Rowland Aff. Ex. A, § 14.10)

The stock purchase closed on July 12, 1991 and was followed almost immediately by a dispute and litigation in which plaintiff claimed that the defendants had defrauded it and violated provisions of the SPA. The dispute was settled on October 4, 1991 at which time the parties entered into three agreements which, among other things, reduced the purchase price by £360,000. One of the agreements (the "Settlement Agreement") contained the following paragraph:

> "Following the aforesaid [price] reduction, each party to the [SPA] hereby acknowledges that it has no further claims arising out of the SPA or the transactions contemplated thereby or any guarantee given in relation thereto by any person against any other party or guarantor or any officer of any other party or guarantor and hereby waives any such claim as may now exist or as may arise after the date hereof." (Rowland Aff. Ex. E)

Notwithstanding the 1991 settlement, further controversies have arisen among the parties with respect to the plaintiff's purchase of the Gulf shares. There is litigation pending in Idaho and the United Kingdom, the details of which are not material to the point now before the Court. Suffice it to say for present purposes that plaintiff brought this action in August 1996 for rescission of the SPA on grounds of fraud and for breach of the SPA during the interval between its execution and the closing.[1] The only basis of personal jurisdiction over the defendants is the consent to jurisdiction contained in the SPA.

*Prior Proceedings in This Action*

On October 19, 1996, the plaintiff served a notice to depose defendant Inoco PLC ("Inoco") pursuant to Rule 30(b)(6), a course of action that left it to Inoco to determine in the first instance the identity of the individual who would testify on its behalf. A few days later, Inoco advised the plaintiff that it intended to move to dismiss or stay the action in deference to the United Kingdom litigation and that it therefore would not produce a witness for examination.

On November 4, 1996, Inoco by letter requested that the Court stay all discovery pending the making and determination of the anticipated motion to dismiss. At a conference held on November 6, the Court declined to do so. The plaintiff indicated that it wished to depose Mr. David Rowland, then Inoco's chairman, immediately in New York. Defendants acquiesced in plaintiff thus designating the witness by whom Inoco would be examined, which it had the right to do more formally in any event. FED.R.CIV.P. 30, 1970 Advisory Committee Note to Rule 30(b)(6). At defendants' request, the Court directed that the deposition proceed in London and that it be deferred at least until November 15 to accommodate Mr. Rowland. The parties subsequently agreed that the deposition would take place on December 9.

On November 12, 1996, the defendants moved to dismiss or stay this action in favor of the parallel United Kingdom litigation, to dismiss the breach of contract claims for failure to state a claim upon which relief may be granted, and to dismiss the fraud claim for failure to plead fraud with particularity as required by FED.R.CIV.P. 9(b). The motion did not assert lack of jurisdiction over the person.

On December 3, 1996, Inoco's counsel, then still Carter, Ledyard & Milburn, advised plaintiff that Mr. Rowland would not appear as scheduled and commenced discussions regarding an alternate date. On December 4, plaintiff was advised that Inoco had discharged the Carter Ledyard firm.

The Court held another conference with counsel on December 5 at which the defen-

---

1. Plaintiff acknowledges that it must succeed in rescinding the Settlement Agreement in order to prevail.

dants were represented by their newly retained present counsel.[2] The issue was the timing of Mr. Rowland's deposition. Defendants' counsel indicated a need for additional time to familiarize himself with the case. The Court suggested that the parties try to work out a new date within one week failing which it would take appropriate action.

Four days later, defendants' new counsel (a) advised the Court that Mr. Rowland had resigned from Inoco's board of directors on December 2 and could not be produced for deposition, and (b) filed a document styled "Defendants' Supplement to Their Motion Under Rules 12(b) and 9(b) to Dismiss the Complaint" in which defendants for the first time sought to assert the defense of lack of jurisdiction over the person.

Following extensive correspondence from the parties, the Court on December 19 issued an order concluding, *inter alia,* that Mr. Rowland is a "managing agent" of Inoco within the meaning of the Federal Rules, that his resignation appeared to be a device designed to avoid his appearance for deposition, and that Inoco must produce him for examination. This precipitated an extensive application for reconsideration in which defendants suggested, among other things, that it would be inappropriate to direct the deposition of Inoco by Mr. Rowland while there was an outstanding issue as to the Court's jurisdiction over Inoco's person.

The Court heard argument and issued a bench opinion on December 26, 1996 (Tr., Dec. 26, 1996, at 16 *et seq.*) and an order signed on December 30, 1996. In relevant part, the Court granted reconsideration, but adhered to the fundamental decision that Inoco must produce Mr. Rowland. It indicated, however, that it would limit the scope of Mr. Rowland's deposition to matters pertinent to determination of the Court's jurisdiction over the defendants in the event the Court permitted defendants to supplement their motion to dismiss despite plaintiff's contention that the defense of lack of personal jurisdiction had been waived. As the deposition is scheduled to take place on January 23, 1997, it is appropriate to determine at this time whether defendants' jurisdictional defense has been waived so that the parties may know the appropriate scope of the deposition.

## Discussion

### Waiver of the Jurisdictional Defense

Plaintiff contends that the defendants have waived any defense of lack of personal jurisdiction by their failure to include the defense in their motion to dismiss the complaint or stay the action and by their subsequent conduct. They rely principally on Rule 12.

Rule 12(g), FED.R.CIV.P., provides in relevant part:

"A party who makes a motion under this rule may join with it any other motions herein provided for [including a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) ] and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."

Rule 12(h)(1) then provides:

"A defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

These two provisions thus make clear that the failure to include the defense of lack of jurisdiction over the person in a Rule 12(b) motion waives the defense. The omission of the defense from defendants' initial notice of motion, plaintiff argues, constituted just such a waiver. It points to a noted treatise on federal practice, which states that if a defendant "wishes to raise [such a defense] he must do so at the time he makes his first significant defensive move—whether it be by way of a Rule 12 motion or a responsive

---

**2.** The Carter Ledyard firm also was present.

pleading." 5A CHARLES ALAN WRIGHT, & AR-THUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1391, at 752 (1990).

■ As plaintiff recognizes, the critical questions are whether and in what circumstances the district court may permit a defendant who omits a defense from such a motion to cure the omission by supplementing the motion.[3]

Plaintiff's first hurdle is *MacNeil v. Whittemore*, 254 F.2d 820 (2d Cir.1958), in which the Second Circuit held that an amendment of a Rule 12 motion two days after filing to include a previously omitted defense of improper venue was sufficient to avoid waiver. If *MacNeil* is good law, then the district court's power to permit supplementation of the motion is clear.

■ Plaintiff contends that *MacNeil* did not survive the 1966 amendment of Rule 12(h)(1). That amendment, however, resolved the distinct questions whether a waivable Rule 12 defense (a) omitted from a motion nevertheless could be asserted subsequently by answer, and (b) omitted from an answer could be resurrected by an amended answer. While the solutions to those problems took a broad pro-waiver position, they did not address the issue at bar. The Court therefore assumes, in the absence of a contrary indication from the Court of Appeals, that it has the power in an appropriate case to permit supplementation of a motion to avoid a Rule 12(h)(1) waiver.

The circumstances in which such amendment or supplementation ought to be permitted are less clear. *MacNeil* articulates one consideration: the application must be made in advance of the hearing of the motion. *MacNeil*, 254 F.2d 820. Another factor appropriately considered is the time interval between the omission and the attempted correction. *See Friedman v. World Transp., Inc.*, 636 F.Supp. 685, 688 (N.D.Ill.1986). As intent frequently is relevant to issues of waiver, the likelihood that the omission of the defense sought to be added to the motion was inadvertent also should play a role in the analysis, as should the defendant's good or bad faith. *See Britton v. Cann*, 682 F.Supp. 110, 113 (D.N.H.1988).

■ In this case, Inoco meets the *sine qua non* that its application be made prior to the hearing of the motion. Nevertheless, other circumstances cut in favor of a different result. It is difficult to imagine that the omission of the jurisdictional defense from the original motion was inadvertent. Defendants, both foreign corporations, were represented by able and esteemed counsel who could not possibly have failed to focus on the issue and who, indeed, referred in their opening brief to the consent to jurisdiction clause in the SPA (Def.Mem. 14 n. 8), circumstances strongly suggesting that the omission was deliberate. Significantly, defendants have offered no affidavit or other evidence to the contrary. Moreover, there is a ready tactical explanation for defendants' omission of the defense from their motion which has been laid out in plaintiff's papers and not denied by the defendants.

---

**3.** Defendants suggest that there is an issue as to when a motion is regarded as having been made, the implication being that there is no need for leave to supplement the motion if the motion is not deemed to have been made until it is heard or fully submitted. The Court rejects the suggestion. The Federal Rules of Civil and Criminal Procedure abound with provisions that would make little sense unless construed to mean that a motion is made when the motion is filed or, perhaps, served. *See, e.g.,* FED.R.CIV.P. 12 (defendant must answer within 20 days of service of summons and complaint unless Rule 12 motion served within that time); 50(b) (motion for judgment as a matter of law must be filed no later than 10 days after entry of judgment); 56(c) (motion for summary judgment must be served at least 10 days before the hearing); 59(b) (motion for new trial must be filed not later than 10 days

after entry of judgment); 60(b) (motion for relief from judgment must be made within a reasonable time and, on certain bases, not more than one year after entry of judgment); FED.R.CRIM.P. 29(c) (motion for judgment of acquittal must be made within 7 days after jury discharged); 33 (motion for new trial ordinarily must be made within 7 days after verdict). To the extent courts have addressed the issue, they are unanimous in regarding a motion as made when it is served or filed, although uniformity is lacking as to which of those dates controls. *See Rivera v. M/T Fossarina*, 840 F.2d 152, 154 (1st Cir.1988) (date of service); *United States v. Valdosta/Lowndes County Hosp. Auth.*, 91 F.R.D. 521 (M.D.Ga. 1981) (Rule 50 motion made when filed); *Parks v. Ford*, 68 F.R.D. 305 (E.D.Pa.1975) (Rule 59 motion made when served).

The defendants admittedly wish to avoid the deposition of Mr. Rowland.[4] They acknowledge also that the Court, under *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), has the power to order a foreign defendant who is contesting personal jurisdiction to submit to discovery for the purpose of litigation of the jurisdictional issue. (Tr., Dec. 26, 1996, 3–4) In consequence, assertion of the jurisdictional defense in the motion risked an early ruling requiring Mr. Rowland to submit to examination at least on the jurisdictional issue. By moving to dismiss or stay in favor of the foreign litigation, however, the defendants were in a position to seek a stay of *all* discovery, as indeed they did. The jurisdictional defense first was raised only after (a) the Court rejected defendants' effort to stay discovery and entered a scheduling order requiring merits discovery to go forward, and (b) defendants reneged on a commitment to produce Mr. Rowland for deposition. It was raised on the same day that defendants advised the Court that Mr. Rowland had resigned from the board in what the Court regards as an effort to avoid being deposed in this action.

In these circumstances, the Court declines to permit defendants to supplement their motion to assert the defense of lack of jurisdiction over the person. The Court concludes that the omission of the defense—given the caliber of counsel, the motion that was filed, and the lack of any evidence or contention to the contrary—was deliberate. Moreover, the evidence indicates that defendants intentionally omitted the defense in an effort to gain a tactical advantage and now are trying to reverse direction after their initial ploy failed.

*The Merits of the Jurisdictional Defense*

Given the clear and unequivocal submission to jurisdiction contained in the SPA, the defendants' only basis for contesting personal jurisdiction in this Court is the assertion that the Settlement Agreement discharged all provisions of the SPA. Even if the Court

were prepared to permit the belated assertion of the defense, it would reject defendants' contention.

■ Defendants certainly are correct in asserting that parties who resolve a dispute concerning a contract may discharge that contract by substituting a new agreement for the old. *See generally Blair & Co. v. Otto V.,* 5 A.D.2d 276, 171 N.Y.S.2d 203 (1st Dept. 1958) (Breitel, J.); *Goldbard v. Empire State Mut. Life Ins. Co.,* 5 A.D.2d 230, 171 N.Y.S.2d 194 (1st Dept.1958) (Breitel, J.). The question whether the subsequent agreement does so, however, depends on "the intention of the parties, as objectively manifested." *Goldbard,* 5 A.D.2d at 234, 171 N.Y.S.2d at 199. Sometimes "the intention may be determined from documents exclusively" while on other occasions it will "depend upon conversation, surrounding circumstances, or extrinsic proof, in addition to documentation ..." *Id.,* 5 A.D.2d at 234, 171 N.Y.S.2d at 199–200.

■ Defendants' contention here is that the Settlement Agreement quoted above unambiguously discharges the SPA. Although they do not so acknowledge, they effectively seek judgment on the pleadings or summary judgment on that proposition. The difficulty with defendants' position is that the Settlement Agreement, unlike the contract at issue in *Blair,* is not dispositive irrespective of whether one approaches the determination of the parties' intention within the four corners of the instrument or considers, in addition, the circumstances in which it was executed. *See generally Fireman's Fund Ins. Cos. v. Siemens Energy & Automation, Inc.,* 948 F.Supp. 1227, 1233–34 (S.D.N.Y.1996).

The language of the Settlement Agreement, while concededly very broad, does not in terms discharge the post-closing obligations of the parties under the SPA. Indeed, its waiver is limited to "further claims *arising out of*" the SPA—language which, if read in pristine isolation, reasonably might

---

4. It is immaterial whether their lack of enthusiasm stems from an unwillingness to be examined fully or merely from a strongly held view that the litigation should proceed only in the United Kingdom. The bottom line is the same in either case.

be construed as extending only to claims of breach of the SPA and not claims of fraud in the inducement of the SPA, although the broader reading is at least equally tenable. And it is no answer, if one limits one's view to the four corners of the instrument, to say that the narrow construction makes no sense given the fact that the Settlement Agreement was created to dispose of claims for fraud in the inducement as well as for breach of the SPA. To do so would be to expand the frame of the analysis beyond the instrument itself to the attendant circumstances, which would require consideration of other facts as well. As an agreement is ambiguous if it "is reasonably susceptible of more than one interpretation," [5] the Settlement Agreement, considered alone, does not establish as a matter of law that the parties intended to discharge the entire SPA.

Expansion of the frame of analysis to consider the circumstances in which the Settlement Agreement was executed yields the same result. To be sure, the fact that the Settlement Agreement disposed of a controversy in which plaintiff asserted a fraudulent inducement claim suggests that the waiver in that document is properly construed as reaching beyond claims for breach of contract. On the other hand, consideration of the terms of the SPA and the overall transaction afford substantial reason to suppose that the parties intended at least some of the obligations undertaken in the SPA to survive the settlement.

The transaction to which the SPA relates involved the purchase by plaintiff of shares of Gulf in exchange for cash and shares of its own common stock. The SPA contained the usual covenants, representations and warranties for a transaction of that character. But it contained also other provisions of importance. For one thing, the transactions made the defendants significant stockholders in the plaintiff. The plaintiff therefore bargained for and obtained both a right of first refusal should the defendants have sought to dispose of shares they acquired and a standstill agreement limiting the proportion of plaintiff's shares that the defendants might hold. (Rowland Aff.Ex.A, §§ 12–13) For another,

the transaction was structured in a manner designed to avoid registration and potential future liability under the U.S. securities laws, an objective very much in the interests of both sides and the attainment of which required that each adhere to certain covenants restricting its post-closing activities. (*E.g., id.* § 5.2) (buyer covenant not to dispose of Gulf shares unless transfer registered under the Securities Act or exempt from registration).

It is far from clear—in the absence of a fully developed record—that the one page settlement agreement was intended to discharge the obligations of the parties under the SPA with respect to the provisions referred to above or anything else not involved in the dispute that the Settlement Agreement resolved, including the consent to jurisdiction. Such a conclusion would require a leap of faith and the turning of a blind eye to the fact that there is no reason to believe that either party even thought of whether the Settlement Agreement would have any such effect, much less that the "objectively manifested" intentions of the parties comprehended such an object.

Defendants rely principally on *Blair & Co.*, asserting that the case stands for the proposition that the Settlement Agreement here is dispositive. The case, however, does not support their position.

In that case, Blair had agreed to assist the defendant in financing certain oil concessions in exchange for the defendant's agreement to pay Blair 30 percent of the net profits derived. A dispute later arose. The parties thereupon entered into an agreement consisting of two documents. The first provided that a new entity would make certain payments to Blair in lieu of the obligations of the defendant. In the second, Blair expressly advised the defendant that "we no longer have any interest in" the original agreement. In time, the new entity failed to pay Blair, and Blair sued the defendant on the original contract. The issue presented to the Appellate Division therefore was whether court below had erred in dismissing Blair's complaint on the ground that the settlement

---

5. *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990).

agreement had discharged the original agreement.

The Appellate Division, per Justice Breitel, held that the language of the settlement agreement, especially the second document, unequivocally manifested the parties' intention to discharge the original agreement. In consequence, it concluded that the complaint before the motion court was insufficient. In nevertheless reversed on the ground that Blair should have been given leave to amend to allege facts sufficient to raise an issue of fact as to the intention of the parties.

*Blair & Co.* does not help defendants here both because the facts are so different and because the disposition in that case does not support defendants' desired result. While the Appellate Division concluded that the facts recited in the complaint in *Blair & Co.* raised no issue of fact as to the parties' intention, there was nothing comparable in that case to the provisions of the SPA discussed above, the continued importance of which following the settlement in this case suggest that the parties did not intend to discharge the SPA entirely. Moreover, the Appellate Division held that Blair was entitled to an opportunity to demonstrate, notwithstanding the apparently unambiguous language of the settlement documents there at issue, that the parties did not intend to displace the original agreement. Hence, *Blair & Co.* is entirely consistent with—indeed, it supports—this Court's view that the uncertainty as to the proper interpretation of the Settlement Agreement here precludes a conclusion at this stage that the consent to jurisdiction contained in the SPA was discharged by the Settlement Agreement.

There are two additional problems with the defendants' position. First, plaintiff here has alleged that the Settlement Agreement was procured by fraud. In consequence, even if the Settlement Agreement unambiguously discharged the SPA in its entirety, plaintiff would be entitled to an opportunity to litigate that issue before the Court.[6]

Second, defendants' position overlooks the fact that one who appears before a court, even solely for the purpose of contesting the court's jurisdiction, "agrees to abide by that court's determination on the issue of jurisdiction ..." *Insurance Corp. of Ireland,* 456 U.S. at 706, 102 S.Ct. at 2106. That agreement requires compliance with "a variety of legal rules and presumptions, as well as straightforward factfinding." *Id.* at 707, 102 S.Ct. at 2106. Among those rules is FED. R.CIV.P. 12(d), which permits the Court to defer determination of a jurisdictional challenge, in appropriate circumstances, even as late as trial. Where, as here, the jurisdictional defense depends upon the determination of the merits of the plaintiff's claim, deferral pending development of an appropriate record is particularly appropriate. *See* 5A WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1373, at 549–51.

For all of these reasons, the Court simply would not be prepared to say at this early stage that the Settlement Agreement abrogated the defendants' consent to jurisdiction in this forum even if defendants had not waived the defense.

### Conclusion

The application for leave to supplement the pending motion to dismiss or stay by adding the defense of lack of jurisdiction over the person is denied. Even if leave were granted, the Court would deny defendants' motion insofar as it seeks to dismiss for lack of jurisdiction over the person.

SO ORDERED.

---

**6.** The Court recognizes that the allegations of fraudulent inducement of the Settlement Agreement arguably leave a good deal to be desired under FED.R.CIV.P. 9(b). This, however, is a mat-

ter for another day, particularly in view of the fact that plaintiff might well be entitled to amend in an effort to make out a better case for avoidance of that Agreement.